# CASES

## ARGUED AND DETERMINED

### IN THE

# UNITED STATES CIRCUIT COURTS OF APPEALS AND THE CIRCUIT AND DISTRICT COURTS.

---

### SHEPARD v. TULARE IRR. DIST.

#### (Circuit Court, S. D. California. April 24, 1899.)

#### No. 859.

1. JURISDICTION OF FEDERAL COURTS — EXISTENCE OF DIFFERENT REMEDY IN STATE COURTS.

The fact that an original action for a mandamus will lie in the courts of the state against a municipal corporation or its officers to compel the payment of bonds issued by the corporation or the levy of a tax for their payment does not deprive the holder of such bonds of the right to maintain an action to recover judgment thereon in a federal court, where the requisite diversity of citizenship exists; a judgment being a necessary preliminary to the issuance of a writ of mandamus by such court, which only grants it in aid of an existing jurisdiction, and not as an original remedy.

2. MUNICIPAL BONDS—ACTIONS ON.

An action in a federal court against a municipal corporation to recover judgment on its bonds is not defeated by the fact that the bonds are payable only out of a special fund required to be created by the corporation, and which it has failed to provide, as if it be conceded that its primary liability is upon the contract to create the fund, and not upon the bonds, that obligation can only be enforced by mandamus, to which a judgment is a necessary prerequisite in a federal court.

3. IRRIGATION DISTRICT—ACTION ON COUPONS—DEMAND.

Where an irrigation district organized under the Wright act of California (St. Cal. 1887, p. 29 et seq.) has issued bonds, the coupons attached to which are payable under the law, and by their express terms, at the office of the treasurer of the district, on a failure to pay such coupons on presentation to the treasurer the holder is not required before bringing suit thereon to make a demand on the treasurer of the county in which the office of the directors is situated, although on the failure of the treasurer of the district to perform his duties in connection with the collection of the tax levied for the payment of the coupons such duties, under the law, devolve on the county treasurer.

4. MUNICIPAL BONDS—ACTIONS ON.

It is no defense to an action against a municipal corporation on its bonds that, if judgment should be obtained, no writ of mandate could be issued under the law to enforce its collection. Such question can only be considered after a judgment has been obtained.

94 F.—1

**5. SAME—BONA FIDE HOLDERS—EFFECT OF RECITALS.**
> In an action on municipal bonds, where the plaintiff alleges that he is a bona fide holder, and the bonds recite their issuance in conformity to law, it is not necessary that the facts showing the regularity and legality of their issuance should be alleged in the complaint.

On Demurrer to Complaint.

S. F. Leib, for plaintiff.

Calvin L. Russell, for defendant.

WELLBORN, District Judge.    Plaintiff, who is a citizen and resident of the state of Michigan, sues to recover upon interest coupons issued by the defendant, an irrigation district created under a statute of the state of California, known as the "Wright Irrigation Act." The plaintiff alleges the due organization of said district, the issuance of the bonds to which said coupons were attached, and that the plaintiff is a bona fide holder thereof.    Defendant has interposed a demurrer to the complaint, on the various grounds hereinafter noticed, and the present hearing is on said demurrer.    Said act (St. Cal. 1887, p. 29 et seq.) contains, among others, the following provisions relating to bonds:

"Sec. 15. For the purpose of constructing necessary irrigating canals and works, and acquiring the necessary property and rights therefor, and otherwise carrying out the provisions of this act, the board of directors of any such district must, as soon after such district has been organized as may be practicable, and whenever thereafter the construction fund has been exhausted by expenditures herein authorized therefrom, and the board deem it necessary or expedient to raise additional money for said purposes, estimate and determine the amount of money necessary to be raised, and shall immediately thereafter call a special election, at which shall be submitted to the electors of such district possessing the qualifications prescribed by this act, the question whether or not the bonds of said district in the amount as determined shall be issued.    Notice of such election must be given by posting notices in three public places in each election precinct in said district for at least twenty days, and also by publication of such notice in some newspaper published in the county where the office of the board of directors of such district is required to be kept, once a week for at least three successive weeks.    Such notices must specify the time of holding the election, the amount of bonds proposed to be issued; and said election must be held and the result thereof determined and declared in all respects as nearly as practicable in conformity with the provisions of this act governing the election of officers; provided, that no informalities in conducting such an election shall invalidate the same, if the election shall have been otherwise fairly conducted.    At such election the ballots shall contain the words 'Bonds—Yes,' or 'Bonds—No,' or words equivalent thereto.    If a majority of the votes cast are 'Bonds—Yes,' the board of directors shall cause bonds in said amount to be issued; if a majority of the votes cast at any bond election are 'Bonds—No,' the result of such election shall be so declared and entered of record. * * * The principal and interest shall be payable at the place designated therein. * * *"

"Sec. 17. Said bonds, and the interest thereon, shall be paid by revenue derived from an annual assessment upon the real property of the district; and all the real property in the district shall be and remain liable to be assessed for such payments as hereinafter provided.

"Sec. 18. The assessor must, between the first Monday in March and the first Monday in June, in each year, assess all real property in the district, to the persons who own, claim, have the possession, or control thereof, at its full cash value. * * *"

"Sec. 22. The board of directors shall then levy an assessment sufficient to raise the annual interest on the outstanding bonds, and at the expiration of

ten years after the issuing of bonds, of any issue must increase said assessment to an amount sufficient to raise a sum sufficient to pay the principal of the outstanding bonds as they mature. The secretary of the board must compute and enter in a separate column of the assessment book the respective sums, in dollars and cents, to be paid as an assessment on the property therein enumerated. When collected, the assessment shall be paid into the district treasury and shall constitute a special fund, to be called the 'Bond Fund of' ———— Irrigation District.' In case of the neglect or refusal of the board of directors to cause such assessment and levy to be made as in this act provided, then the assessment of property made by the county assessor and the state board of equalization shall be adopted, and shall be the basis of assessments for the district, and the board of supervisors of the county in which the office of the board of directors is situated shall cause an assessment roll for said district to be prepared, and shall make the levy required by this act, in the same manner and with like effect as if the same had been made by said board of directors, and all expenses incident thereto shall be borne by such district. In case of the neglect or refusal of the collector or treasurer of the district to perform the duties imposed by law, then the tax collector and treasurer of the county in which the office of the board of directors is situated must, respectively, perform such duties, and shall be accountable therefor upon their official bonds as in other cases.

"Sec. 23. The assessment upon real property is a lien against the property assessed, from and after the first Monday in March for any year; and such lien is not removed until the assessments are paid or the property sold for the payment thereof."

Sections 24 to 33, inclusive, provide for the collection of assessments by the collector of the district, and for the payment over to the treasurer of the district of all moneys so collected. In section 34 occurs the following provision:

"Upon the presentation of the coupons due to the treasurer, he shall pay the same from said bond fund."

Defendant contends that all the officers of said district, except as otherwise alleged in the complaint, are presumed to have regularly performed their duties,—citing Code Civ. Proc. Cal. § 1963, subd. 15; and that, inasmuch as the only dereliction of duty charged in said complaint is against the treasurer, it must be assumed that the requisite assessments to pay the coupons sued on have been collected and placed in his hands for that purpose, and therefore that plaintiff has an adequate remedy by mandamus against the treasurer, available in the state courts, and, because of such remedy, cannot resort to an ordinary common-law action in the federal courts. This contention is fully met by the considerations that in the federal courts mandamus will not issue as an original, independent proceeding, but only in the exercise of a jurisdiction already acquired (Bath Co. v. Amy, 13 Wall. 244; Greene Co. v. Daniel, 102 U. S. 187; Davenport v. Dodge Co., 105 U. S. 237; Town of Queensbury v. Culver, 19 Wall. 83; Heine v. Commissioners, Id. 655; Waite v. City of Santa Cruz, 89 Fed. 619), and the present action is to be regarded as one to establish the validity and amount of plaintiff's debt (2 Dill. Mun. Corp. § 856),—an initiatory step to mandamus.

The case of Waite v. City of Santa Cruz, supra, cannot be distinguished from the case at bar, since the law providing for the payment of the bonds involved in the former case (St. Cal. 1893, p. 59) is the same in principle as section 17 of the Wright act, hereinbefore

quoted; in other words, the bonds in both cases are payable out of special funds.

In Heine v. Commissioners, supra, the supreme court of the United States says:

"The question thus presented by the present case is not a new one in this court. It has been decided in numerous cases, founded on the refusal to pay corporation bonds, that the appropriate proceeding was to sue at law, and by a judgment of the court establish the validity of the claim and the amount due, and by the return of an ordinary execution ascertain that no property of the corporation could be found liable to such execution and sufficient to satisfy the judgment. Then, if the corporation had authority to levy and collect taxes for the payment of that debt, a mandamus would issue to compel them to raise by taxation the amount necessary to satisfy the debt."

In Greene Co. v. Daniel, supra, the same high authority speaks as follows:

"In the state courts, under the rule as stated in Shinbone v. Randolph Co., 56 Ala. 183, and other cases, a mandamus would lie, without reducing the coupons to judgment, to compel the commissioner's court to levy and collect the taxes necessary to pay what was due. The rule is different, however, in the courts of the United States, where such a writ can only be granted in aid of an existing jurisdiction. There a judgment at law on the coupons is necessary to support such a writ. The mandamus is in the nature of an execution to carry the judgment into effect. Bath Co. v. Amy, 13 Wall. 244; Graham v. Norton, 15 Wall. 427. A suit, therefore, to get judgment on the bonds or coupons is part of the necessary machinery which the courts of the United States must use in enforcing the claim, and the jurisdiction of those courts is not ousted simply because in the courts of the state a remedy may be afforded in another way."

To hold that, because mandamus is available in the first instance in the state court, but not in the federal court, therefore plaintiff must sue in the former, would be to hold, in effect, that federal jurisdiction can be ousted by state law, which we know is not the case. Lincoln Co. v. Luning, 133 U. S. 529, 10 Sup. Ct. 363; Hyde v. Stone, 20 How. 175; Suydam v. Broadnax, 14 Pet. 67; Bank v. Vaiden, 18 How. 503; Reagan v. Trust Co., 154 U. S. 420, 14 Sup. Ct. 1062.

In Hyde v. Stone, 20 How. 175, the court says:

"But this court has repeatedly decided that the jurisdiction of the courts of the United States over controversies between citizens of different states cannot be impaired by the laws of the states which prescribe the mode of redress in their courts, or which regulate the distribution of their judicial power. In many cases state laws form a rule of decision for the courts of the United States, and the forms of proceeding in these courts have been assimilated to those of the states, either by legislative enactment or by their own rules. But the courts of the United States are bound to proceed to judgment, and to afford redress to suitors before them, in every case to which their jurisdiction extends. They cannot abdicate their authority or duty in any case in favor of another jurisdiction. Suydam v. Broadnax, 14 Pet. 67; Bank v. Vaiden, 18 How. 503."

Defendant also reaches the conclusion that mandamus is plaintiff's sole remedy by another line of reasoning, namely, that defendant's obligation is not a general obligation to pay, but only a special obligation to levy, collect, and disburse the annual assessments provided for in the foregoing sections of the Wright act, and therefore a common-law judgment, with the ordinary writ of execution, would sub-

ject the defendant to a more burdensome liability than its contract imposes. This argument, whatever may be the character or scope of defendant's obligation, is fully answered by what I have just said as to the federal procedure on mandamus, and the further consideration that a judgment, if obtained in the present action, will not enlarge or change said obligation, so far as concerns the fund out of which it is payable. U. S. v. Macon Co., 99 U. S. 592; Higgins v. Water Co., 118 Cal. 554, 45 Pac. 824, and 50 Pac. 670; Buck v. City of Eureka, 119 Cal. 46, 50 Pac. 1065.

Another contention of defendant, kindred to those already noticed, is that the coupons sued on are payable out of a special fund, and that the complaint is bad because of its failure to allege that there is money in that fund sufficient to pay said coupons,—citing, among others, the case of Travelers' Ins. Co. v. City of Denver (Colo. Sup.) 18 Pac. 558. The principle of that case, doubtless, is that the primary obligation of the city was to create a fund, and therefore, unless the fund was in existence, plaintiff had no remedy except to compel the officers of the corporation to perform their duties and create the fund. The court says:

"The city having contracted to take certain steps to create a proper fund for the payment of the cost of constructing the sewer, and a party contracting to do the work having contracted that payment therefor should be made out of the fund so to be created, it is evident that the city is not liable, in an action upon warrants drawn on that fund, without a showing that there is money in the fund to pay the same. The primary liability of the city is upon its contract to create a fund. Bill v. City of Denver, 29 Fed. 344."

In the last-named case defendant's contention is stated thus:

"It is insisted, on the part of the city, that its sole liability was the making of an assessment and levy upon this sewer district, and that, if it has failed to discharge that duty, the plaintiff's sole remedy is by mandamus proceedings to compel it to proceed therewith."

If it be conceded, which, however, I do not decide, that the last sentence above quoted from Travelers' Ins. Co. v. City of Denver, namely, "The primary liability of the city is upon its contract to create a fund," aptly characterizes the liability of the defendant herein, still the doctrine of that case, applicable where mandamus issues as an original, independent proceeding, cannot defeat the present action, for the reason already stated that, under federal practice, said action is prerequisite to a writ of mandate.

Defendant further contends that the complaint should have alleged a demand upon the treasurer of the county. Such a demand, I think, was unnecessary, in view of the facts that the law expressly requires and the bonds stipulate in terms for payment of the coupons at the office of the treasurer of the district. Defendant further contends that the present action cannot be maintained because the plaintiff, should he recover judgment herein, would not then be entitled to a writ of mandate. This contention, it seems to me, is without merit. As well might recovery on a promissory note, admittedly executed by a defendant, be resisted on the ground that he is insolvent, and therefore judgment against him would be ineffectual. Plaintiff's counsel suggests with much force that section 14 of the judiciary act of 1789, partially embodied in Rev. St. U. S. § 716, and which, as

**6**

construed by the supreme court in Bath Co. v. Amy, supra, and the other cases cited in same connection, authorizes mandamus only when ancillary to a jurisdiction already acquired, is similar in principle to the rule of equity practice which requires a creditor who desires to attack a conveyance for fraud to first reduce his claim to judgment,— citing Kent v. Curtis, 4 Mo. App. 121; Estes v. Wilcox, 67 N. Y. 266; Cates v. Allen, 149 U. S. 451, 13 Sup. Ct. 883, 977. Whether or not, under the circumstances of this case, the officers of the district are compellable to raise a fund with which to pay off plaintiff's coupons is a question to be determined after the plaintiff shall have obtained, if he does obtain, the judgment he seeks in this action.

With reference to the other objections to the complaint, that it fails to show legal notice of the election for the issuance of the bonds, and which of the bonds were exchanged for water rights and other properties, and which were sold for cash, it is only necessary to say that the complaint alleges that the plaintiff is a bona fide holder of the coupons, and that the bonds recite their issuance in conformity to law. Lincoln v. Iron Co., 103 U. S. 412; Provident Life & T. Co. v. Mercer Co., 170 U. S. 593, 18 Sup. Ct. 788; 15 Am. & Eng. Enc. Law, 1265; Town of East Lincoln v. Davenport, 94 U. S. 801; Grand Chute v. Winegar, 15 Wall. 355; Mercer Co. v. Hacket, 1 Wall. 93; Town of Brooklyn v. Ætna Life Ins. Co., 99 U. S. 362; Bernard's Tp. v. Morrison, 133 U. S. 523, 10 Sup. Ct. 333. Demurrer overruled.