### CITY OF SANTA CRUZ v. WAITE.

(Circuit Court of Appeals, Ninth Circuit. December 4, 1899.)

#### No. 505.

**1.** MUNICIPAL BONDS—AUTHORITY TO ISSUE—REFUNDING BONDS.

A statute authorizing cities to refund their "outstanding indebtedness, evidenced by bonds and warrants thereof," gives a city no power to issue bonds for the purpose of paying bonds of a water company secured by mortgage on its property, which the city has since bought subject to the mortgage.

**2.** SAME—ESTOPPEL BY RECITALS.

Act Cal. March 1, 1893 (St. 1893, p. 59), authorizes the governing bodies of cities and towns, other than cities of the first class, having outstanding indebtedness evidenced by bonds and warrants, to submit to the electors the question of refunding such indebtedness, and provides that the notice of the election shall recite the indebtedness proposed to be refunded. Acting under such statute, the mayor and council of a city submitted the question of issuing bonds for the refunding of a certain indebtedness specified in the notice of election, a portion of which the city had no power, under the statute, to refund, and on a favorable vote the officers issued a series of bonds, which they sold on credit, and which were resold by the purchasers, who became insolvent, by reason of which the city received nothing from the issue. *Held,* that inasmuch as the city council could only act, in calling the election and prescribing the notice therefor, by order, resolution, or ordinance, which, by the statutes of the state, are required to be made matters of public record, the statute charged all purchasers of bonds issued thereunder with notice of the facts shown by such record in regard to the character of the indebtedness to refund which they were issued; and that the officers of the city, under the implied authority given them to issue the bonds on a favorable vote, had no power to make recitals therein which would relieve the purchasers from the effect of such notice, or estop the city from proving by such records the invalidity of the bonds.

**3.** JURISDICTION OF FEDERAL COURTS—ACTIONS ON MUNICIPAL BONDS.

The owner of municipal bonds, or coupons therefrom, containing a direct promise to pay, may maintain an action at law in a federal court to

recover judgment thereon, where the requisite jurisdictional facts appear, although, under the laws of the state, such bonds or coupons are payable only out of a special fund which the statute requires the officers of the defendant to create by the levy of taxes for that purpose; nor is the plaintiff required to show that they have performed their duty in that regard.

Gilbert, Circuit Judge, dissenting.

In Error to the Circuit Court of the United States for the Northern District of California.

John Garber and Carl E. Lindsay, for plaintiff in error.

Chickering, Thomas & Greggory, and Wm. Thomas, for defendant in error.

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

ROSS, Circuit Judge. The constitution of California provides for the classification of municipal corporations. The plaintiff in error (defendant in the court below) is, and was at all the times mentioned in the record, a municipal corporation of the fifth class, organized and existing under and by virtue of a statute of the state of California, approved March 31, 1866 (St. 1865–66, p. 547), entitled "An act to incorporate the town of Santa Cruz," and an act supplemental thereto, approved March 11, 1878, entitled "An act to reincorporate the city of Santa Cruz" (St. 1878, p. 189). The present is an action at law to recover the amount alleged to be due on 9 refunding bonds and 282 interest coupons attached to the same and to other refunding bonds, alleged to have been issued by the city of Santa Cruz on the 16th day of April, 1894, under and by virtue of an act of the state of California approved March 1, 1893, and entitled "An act to amend an act entitled 'An act to authorize the common council, board of trustees, or other governing body of any incorporated city or town, other than cities of the first class, to refund its indebtedness, issue bonds therefor, and provide for the payment of the same,' approved March 15, 1883" (St. 1893, p. 59). While the suit directly involves only the amount alleged to be due upon the bonds and coupons mentioned, it necessarily involves the validity of the entire issue under that act, consisting of 360 bonds of $1,000 each, purporting to have been issued at the same time. It appears from the findings of the court below that on February 26, 1894, the city of Santa Cruz had an outstanding bonded indebtedness of $271,000, or thereabouts, and was also the owner of certain waterworks, and necessary appurtenances thereto, including land, water rights, etc., theretofore purchased by it from the City Water Company of Santa Cruz, a private corporation. The waterworks and appurtenant property were subject to a mortgage, which had been placed thereon by the City Water Company of Santa Cruz for the purpose of securing an outstanding bonded indebtedness of that corporation in the sum of $89,000 and interest thereon. On the said 26th day of February, 1894, the common council of the city, deeming it for the best interests of the city to refund its bonded indebtedness under the provisions of the act of March 1, 1893, adopted an ordinance, which was duly approved by the mayor, providing for a special election to be held in the city of

Santa Cruz on the 13th day of March, 1894, at which there should be submitted to its qualified electors the question of refunding the outstanding bonded indebtedness of the city. The indebtedness which it was thus proposed to refund was described in the ordinance as consisting not only of certain bonds of the city, amounting to the sum of $271,000, but also "eighty-nine (89) first mortgage bonds (with interest thereon from November 1, 1893) of the corporation, the City Water Company of Santa Cruz, heretofore issued by said corporation, the City Water Company of Santa Cruz, which bonds bear date May 1, 1890, and are of the denomination of one thousand ($1,000) dollars each, and bearing interest at the rate of six (6) per cent. per annum, payable semiannually, and are secured by a mortgage or deed of trust upon the property known as the 'City Waterworks of Santa Cruz,' executed by the City Water Company of Santa Cruz, as party of the first part therein, to the Holland Trust Company of New York, as trustee, party of the second part therein; and which said bonds outstanding were, at the time of the conveyance by the City Water Company of Santa Cruz to the City of Santa Cruz of the property known as the 'City Waterworks,' and now are, a valid lien and charge upon the said property known as the 'City Waterworks,' and became thereby a part of the bonded indebtedness of the city of Santa Cruz." More than two-thirds of the qualified electors of the city voted at the special election thus called in favor of the proposition to refund the then outstanding bonded indebtedness, as described in the ordinance, and thereafter, to wit, on March 26, 1894, the common council of the city passed, and its mayor approved, an ordinance for the purpose of carrying into effect the will of the electors as expressed at the election. This ordinance provided for the issuance of 360 interest-bearing bonds of the city of the denomination of $1,000 each, and also directed that said bonds should be signed by the mayor and city clerk, and should contain the following recitals:

"This bond is one of a series of bonds of like date, tenor, and effect, issued by the said city of Santa Cruz for the purpose of refunding the bonded indebtedness of said city, and issuing bonds therefor, and providing for the payment of the same under, and in pursuance of, and in conformity with the provisions of an act of the legislature of the state of California, 'An act to amend an act entitled "An act authorizing the common council, board of trustees, or other governing body of any incorporated city of town, other than cities of the first class, to refund its indebtedness, issue bonds therefor, and provide for the payment of the same" (approved March 15, 1883),' approved March 1, 1893, and in pursuance of and in conformity with the constitution of the state of California and the ordinances of the city of Santa Cruz, and in pursuance of and in conformity with a vote of more than two-thirds of all the qualified electors of said city of Santa Cruz voting at a special election duly and legally called and held and conducted in said city, as provided under said act, on Tuesday, the thirteenth day of March, 1894, notice thereof having been duly and legally given and published in the manner as required by law, and after the result of said election had been duly canvassed, found, and declared in the manner and as required by law; and it is hereby certified and declared that all acts, conditions, and things required by law to be done precedent to and in the issue of said bonds have been properly done, happened, and performed in legal and due form, and as required by law."

The ordinance further directed that such bonds should, after public notice inviting bids therefor, be sold to the highest bidder, for not

less than their face value, in United States gold coin, to be paid on delivery at the city treasurer's office in the city of Santa Cruz. The bonds were offered for sale, but there were no bidders for them; and on April 16, 1894, the date to which the common council of the city had regularly adjourned, there were present William T. Jeter, assuming to act as mayor, and J. Howard Bailey, F. J. Hoffman, E. G. Green, and F. W. Lucas, assuming to act as the common council, of the city. At this meeting, a proposition, theretofore made by the firm of Coffin & Stanton, to take all of the bonds, was accepted, upon condition that satisfactory security for its faithful performance by Coffin & Stanton be furnished. This proposition was dated February 27, 1894 (the day after the adoption of the ordinance calling the election), and was, in substance, one by which Coffin & Stanton were to purchase the refunding bonds at par value, less 3 per cent., without the payment of any money at the time of their delivery, or giving any other consideration therefor than their promise to take up the outstanding bonds which were to be refunded, and forward the same, "from time to time, to the city, for cancellation." On April 23, 1894, the said Jeter, assuming to act as mayor, and the said Bailey, Hoffman, Green, and Lucas, assuming to act as the common council, of the city, publicly met, pursuant to adjournment, and without protest from any one accepted and approved a bond presented by Coffin & Stanton for the faithful performance by them of the agreement contained in the proposition mentioned, and thereupon directed the city clerk of the city to deliver to that firm the entire issue of the refunding bonds referred to. The bonds were, in accordance with this direction, delivered to Walter Stanton, of the firm of Coffin & Stanton, on April 24, 1894, and thereafter Coffin & Stanton sold the same to various parties, from some of whom the plaintiff below (defendant in error here) claims title to the bonds and coupons sued on. The plaintiff is only the nominal owner of these bonds and coupons, the same having been assigned to him for the purpose of collection only. Coffin & Stanton never complied, in whole or in part, with the agreement under which the bonds were delivered to them, and the city of Santa Cruz never received any benefit whatever from their sale; the entire proceeds thereof having been appropriated by Coffin & Stanton, who are insolvent. The bonds are under the seal of the defendant city, contain the recitals set out, and are signed: "Wm. T. Jeter, Mayor of the City of Santa Cruz. Attest: O. J. Lincoln, City Clerk." They were so signed on the 16th day of April, 1894, on which day Jeter's successor to the office of mayor duly qualified.

The court below held—and rightly held—that the act of March 1, 1893, afforded no authority for the issuance by the city of Santa Cruz of any bonds for the purpose of refunding the indebtedness of the City Water Company, which was a private corporation. The court further held that, as the bonds issued by the city under that act for that purpose were in no way segregated from others of the same issue, the plaintiff could only be permitted to recover by sustaining his contention that he was a bona fide purchaser without notice of this infirmity in the bonds, and as such was protected by the recitals contained therein. This contention the court below sus-

tained, and accordingly gave judgment for the plaintiff. (C. C.) 89 Fed. 619.

The federal courts have always protected with a firm hand the rights of bona fide creditors of municipal corporations, uniformly holding that the bonds issued by such corporations under granted power, negotiable in form, are valid in the hands of a bona fide holder, notwithstanding irregularities in their issue, or even in the non-performance of prior conditions, where the determination of the facts of such performance are by the law left to the determination of the municipal officers, and they incorporate in the bonds which are put upon the market proper recitals of such performance. The obvious reason for this is that, where the law under which such securities are authorized to be issued commits to the municipal representatives the determination of the conditions precedent, and those representatives recite upon the face of the bonds such performance, common honesty demands that the municipality be estopped to deny the truth of the recitals as against the bona fide purchaser of the bonds. But it is equally well settled that where the power to issue such bonds did not exist, or where the law under which they are issued requires certain facts to be made a matter of record, open to the inspection of every one, there can be no implication that it was intended to leave such facts to be determined by the officers charged with the duty of issuing the bonds, and conclude by their recitals contrary to the facts so recorded. Sutliff v. Commissioners, 147 U. S. 230, 13 Sup. Ct. 318, 37 L. Ed. 145; Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. 315, 28 L. Ed. 360. It is, as a matter of course, not denied that every purchaser of a municipal bond is charged with notice of the law under and by virtue of which it is issued. In the present case that law is found in the statute of March 1, 1893 (St. 1893, p. 59), the first and second sections of which are as follows:

"Section 1. That whenever any incorporated city or town, other than cities of the first class, in this state, has an outstanding indebtedness, evidenced by bonds and warrants thereof, the common council, board of trustees, or other governing body thereof, shall have power to submit to the qualified electors of such city or town, at an election to be held for that purpose, the question of refunding such indebtedness. Said election shall be called and held in the same manner in which other elections are held in such city or town. The notice of such election shall recite the indebtedness to be refunded, together with the denomination, character, time of payment, rate of interest, as well as all other details of the bonds proposed to be issued. Such bonds shall be of the character known as 'serials,' one fortieth of the principal being payable each year, together with interest due on all sums unpaid. Said bonds may be issued in denominations not to exceed one thousand dollars, nor less than one hundred dollars; principal and interest being payable in gold coin or lawful money of the United States, and either at the office of treasurer of such city or town, or at a designated bank situated in the cities of San Francisco, New York, Boston, or Chicago. Interest upon the same shall not exceed six per cent. per annum, and may be payable semi-annually. Said bonds shall be sold in the manner provided by such city council, or other governing body, to the highest bidder, for not less than their face value, in the same character of money in which they were payable. The proceeds of such sale shall be placed in the treasury to the credit of the funding fund, and shall be applied only for the purpose of refunding the indebtedness for which they have been issued. Said common council or other governing body, shall, at the time of fixing the general tax levy for each year, and in the same manner for such tax levy provided, levy and collect annually, each year, sufficient money to pay one

fortieth part of the principal of such bonds, and also the annual interest upon the portion remaining unpaid.

"Sec. 2. Whenever sufficient money is in the funding fund, in the hands of the treasurer, to redeem one or more of the outstanding bonds proposed to be refunded, he shall publish once a week for two weeks in some newspaper of general circulation published in such city or town, if there be any, a notice to the effect that he is prepared to pay such bond or bonds (giving the number thereof), and if the same are not presented for redemption within thirty days after the first publication of such notice, the interest on such bonds will cease. He shall, at the same time, deposit in the post office a copy of such notice, inclosed in a sealed envelope with the postage paid thereon, addressed to the owner or owners of such bond or bonds at the post office address of such owner or owners, as shown by the record thereof kept in the treasurer's office. If such bond or bonds are not presented within the time specified in such notice, the interest thereon shall then cease, and the amount due be set aside for the payment of the same, whenever presented. All redemption of bonds shall be made according to the priority in the order of their issuance, beginning at the first number. Whenever such outstanding bonds are surrendered and paid, the treasurer shall proceed to cancel the same by indorsing on the face thereof the amount for which they are received, the word 'Cancelled,' and the date of cancellation. He shall also keep a record of such bonds so redeemed, and shall make a report of the same to the common council, or other governing body of such city or town, at least once a month, accompanying the same therewith by the bonds which have been taken up and cancelled."

It will be noticed that there is in this act no express grant of power on the part of the municipal authorities to issue any bonds. There is an implied power; but the implication is, not to issue bonds for any and all purposes, but refunding bonds, with which to take up the outstanding bonds and warrants of the city, provided a majority of the qualified electors of the city should so vote upon the submission of the question to them in the mode described by the act. Whether the then outstanding indebtedness of the city should be refunded or not was not left to the determination of the municipal authorities, but they were, by the statute, empowered to submit that question to a vote of the qualified electors of the city, specifying in the notice of election the indebtedness to be refunded, together with all details of the proposed issue. The power thus conferred on the mayor and council could only be exercised at a meeting of the municipal board. Such bodies can only act by order, ordinance, or resolution, as every one is bound to know. Wesson v. Saline Co., 20 C. C. A. 227, 73 Fed. 919; 15 Am. & Eng. Enc. Law, pp. 1028–1030, and cases there cited. In the present instance the action of the mayor and council was by ordinance, as appears from the findings of the court below. Such ordinance was a part of the public records of the city, which, by its charter, are required to be kept "in large, well bound, uniform, and suitable books." St. 1875–76, p. 203. The indebtedness of the city, thus evidenced by its outstanding bonds and warrants, and proposed to be refunded by the issuance of other bonds, the act of March 1, 1893, authorized the mayor and common council of the city to specify, together with the details of the proposed issue, and submit the question refunding the specified indebtedness, upon the designated terms, to the qualified electors of the city for determination. In the event the majority of the votes should be in favor of the proposition, then the municipal authorities were impliedly empowered to issue refund-

ing bonds therefor, but for no other purpose. The public record which the act of March 1, 1893, taken and read, as it must be, in connection with the charter of the city, required to be made by order, ordinance, or resolution, disclosed to all the world the specific indebtedness that it was proposed by the municipal authorities to refund, and in respect to which the qualified electors of the city were called upon to vote. The officers impliedly charged with the issue of such refunding bonds were not in any manner authorized to make any certificate or representation to prospective purchasers in respect to the character of the indebtedness evidenced by outstanding bonds or warrants of the city in lieu of which the refunding bonds were authorized to be issued. On the contrary, the statute itself was clear notice to every person that upon the records of the governing body of the city was required to be entered the specific indebtedness proposed to be refunded, together with the details of the proposed issue of refunding bonds, and that it was only for such specified indebtedness that any refunding bonds could be issued. To that record every purchaser was referred by the very act under which alone the bonds in suit were issued. The notice of election directed by this act to be prescribed by the mayor and common council of the city occupies substantially the same position that the resolution did in the case of Lehman v. City of San Diego, which was lately before this court, and is reported in 27 C. C. A. 668, 83 Fed. 669. The present case is, we think, clearly within the doctrine of that case and of Sutliff v. Commissioners, supra, and Dixon Co. v. Field, supra, and kindred cases, and must be ruled by them.

Entertaining these views, it is not necessary to decide any other point made and argued by counsel, except that as to the jurisdiction of the court. We have no doubt of the existence of jurisdiction. In support of the point made on behalf of the plaintiff in error against it, it is argued that the action is substantially a proceeding in the nature of an application for a writ of mandamus to compel the officers of the city to perform the duty of levying and collecting the necessary taxes for the payment of the bonds, which, without the issuance of such writ, and judgment in favor of the plaintiff, could not be enforced. The action is one at law upon certain bonds and coupons containing a promise on the part of the defendant to the suit "to pay to the bearer, for value received," so many dollars. The amount in controversy exceeds $2,000, and the requisite diverse citizenship is alleged and found to exist. Conceding that under the constitution and laws of California the bonds and coupons sued on could only be paid out of the special fund provided for by the act under which they were issued, if the act and bonds be valid,— questions raised and contested in the suit,—no presumption can be indulged that there are no moneys in the fund provided for. On the contrary, if the act be valid, the presumption is the other way, to wit, that the taxes provided for were levied by the officers charged with the duty of levying them, and that the moneys so raised were in the fund. It was not, therefore, as argued by counsel for the plaintiff in error, necessary that the complaint should show the levy of such taxes, and the existence of moneys in the special fund. In such

cases, where the plaintiff recovers, and there are no moneys in the fund out of which an execution issued upon the judgment can be satisfied, and this because of the refusal of the proper officers to levy the taxes, the federal courts will issue a writ of mandamus in aid of its already acquired jurisdiction. This is quite distinct from an original proceeding for the issuance of a writ of mandamus, which it is well settled cannot be maintained in the federal courts. Heine v. Commissioners, 19 Wall. 655, 22 L. Ed. 223; Bath Co. v. Amy, 13 Wall. 244, 20 L. Ed. 539; Board v. Aspinwall, 24 How. 376, 16 L. Ed. 735; Von Hoffman v. City of Quincy, 4 Wall. 535, 18 L. Ed. 403; Riggs v. Johnson Co., 6 Wall. 166, 18 L. Ed. 768; Walkley v. City of Muscatine, 6 Wall. 481, 18 L. Ed. 930; Board v. McMaster, 15 C. C. A. 353, 68 Fed. 177; Keene Five-Cent. Sav. Bank v. Lyon Co. (C. C.) 90 Fed. 523; Wilson v. Knox Co. (C. C.) 43 Fed. 481; Shepard v. Irrigation Dist. (C. C.) 94 Fed. 1.

The judgment is reversed, and cause remanded to the court below, with directions to enter judgment for the defendant on the findings

GILBERT, Circuit Judge (dissenting). I am unable to agree with the majority of the court in holding that the city of Santa Cruz is not estopped to dispute the validity of its bonds. The outstanding indebtedness which, under the authority of the act of March 1, 1893, the city attempted to refund, comprised a bonded indebtedness of the city amounting to $271,000, and a liability for $89,000 upon the first mortgage bonds of the City Water Company of Santa Cruz, which had been issued by that company before the purchase of its property by the city, and the payment of which had been assumed by the city. The power to refund the city's own bonded indebtedness was clearly within the letter and the spirit of the act. The $89,000 of the first mortgage bonds of the water company, while it represented an outstanding indebtedness of the city, for which it was liable, and for the payment of which it might have borrowed money under proper proceedings therefor, and the refunding of which was within the spirit of the provisions of the act, was, nevertheless, not evidenced by the city's "bonds and warrants," and was, therefore, not within the letter of the law. To that extent the proposed application of funds which were to be realized upon the sale of the refunding bonds was illegal. The case presented is not a case where, either by the constitution or by the statute of the state, the city lacked the power to refund its indebtedness. The invalidity of the refunding bonds resulted from the proposed misapplication of a portion of the proceeds thereof. The underlying principles which are involved must not be permitted to become obscured by reason of the fact that the city of Santa Cruz was, by its agents, defrauded of the proceeds of the refunding bonds, and never, in fact, received any portion thereof. The real question is whether a city, after procuring money on its bonds, which were issued for an unlawful purpose, but which the city certified were issued for a purpose which was lawful, and for which statutory authority existed, can deny its obligation as against an innocent purchaser. The case comes precisely within the principles announced in Hackett v. Ottawa, 99 U. S. 86, 25 L. Ed.

363. In that case the city of Ottawa contended that its bonds were void for the reason that they had been issued for a loan which was not for a municipal purpose, but for a donation to a private corporation in no wise connected with, or under the control of, the city. In that case, as in this, the ordinances of the city disclosed the purpose for which it was proposed to borrow money upon the city's credit. The court said:

"The bonds in suit, by their recital of the titles of the ordinances under which they were issued, in effect assured the purchaser that they were to be used for municipal purposes, with the previous sanction, duly given, of a majority of the legal voters of the city. If he would have been bound, under some circumstances, to take notice, at his peril, of the provisions of the ordinances, he was relieved from any responsibility or duty in that regard by reason of the representation, upon the face of the bonds, that the ordinances under which they were issued were ordinances 'providing for a loan for municipal purposes.' Such a representation, by the constituted authorities of the city, under its corporate seal, would naturally avert suspicion of bad faith upon their part, and induce the purchaser to omit an examination of the ordinances themselves. It was, substantially, a declaration by the city, with the consent of a majority of its legal voters, that purchasers need not examine the ordinances, since their title indicated a loan for municipal purposes. The city is, therefore, estopped, by its own representations, to say, as against a bona fide holder of the bonds, that they were not issued or used for municipal or corporate purposes."

In the present case the opinion of the majority of the court seems to have been influenced by the fact that by the charter of the city of Santa Cruz a public record of its ordinances is required to be kept in books accessible to the public, and by the further fact that the city officers, who were impliedly authorized to issue the refunding bonds, were not expressly empowered to make any certificate or representation to prospective purchasers in respect to the character of the indebtedness for the payment of which the refunding bonds were issued. As far as the first consideration is concerned, it is sufficient to say that the charters of all municipal corporations require similar public records of their proceedings, and that such was undoubtedly the case with the city of Ottawa; yet in Hackett v. Ottawa the court deemed that fact immaterial to the question which was before it, held that a purchaser of bonds was not bound to inspect such records, and disposed of the case upon the general principles of estoppel applicable to all cases. Neither can any distinction between that case and the case at bar be predicated upon the fact that the act of March 1, 1893, under which the refunding bonds of the city of Santa Cruz were issued, conferred no express power upon the officers of the city to certify to any particular fact in connection with the proceedings on which the bonds were issued, or to make any recitals whatever upon the bonds. The proceedings were had under a statute that not only conferred authority to refund the bonded indebtedness, but imposed a duty upon the city to determine whether the occasion had arisen to refund, and, if so, to determine wherein the bonded indebtedness consisted, and the nature and amount thereof. Under this authority the city determined that the water company's bonds were a portion of its bonded debt, and, as such, subject to be refunded. The officers of the city of Santa Cruz who executed the refunding bonds were the officers whose duty it was

to issue them. Before doing so, they were obliged to determine for themselves that the antecedent steps had been taken which were indispensable to the issuance thereof, and they were empowered by an ordinance of the city to recite upon the bonds the facts usually recited upon such instruments,—the facts upon which the purchaser was authorized to proceed, and on which he might rely, as was done in the Ottawa Case. The bonds were executed under the seal of the city, and were signed by the mayor and the city clerk. These were the officers whose duty it was to sign such instruments. Said the court in Town of Coloma v. Eaves, 92 U. S. 484, 488, 23 L. Ed. 579:

"At some time or other it is to be ascertained whether the directions of the act have been followed, whether there was any popular vote, or whether a majority of the legal voters present at the election did, in fact, vote in favor of the subscription. The duty of ascertaining was plainly intended to be vested somewhere, and once for all; and the only persons spoken of who have any duties to perform respecting the election, and action consequent upon it, are the town clerk and the supervisor or other executive officer of the city or town. It is a fair presumption, therefore, that the legislature intended that those officers, or one of them at least, should determine whether the requirements of the act prior to a subscription to the stock of a railroad company had been met."

The bonds in question in the present case contain the recital that they were issued "for the purpose of refunding the bonded indebtedness of said city," in pursuance of the act of March 1, 1893, "and in pursuance of, and in conformity with, the constitution of the state of California, and the ordinances of the city of Santa Cruz, and in pursuance of, and in conformity with, a vote of more than two-thirds of all the qualified electors of said city," etc., and contained the certificate "that all acts, conditions, and things required by law to be done precedent to and in the issue of said bonds have been properly done, happened, and performed, in legal and due form, and as required by law." Here is a distinct certificate that the bond was issued for the purpose of refunding the bonded indebtedness of the city. This recital was expressly authorized by an ordinance of the city before the bonds were issued. It was a representation of fact, and not of law. In that respect the case stands upon a ground entirely distinct from that which controlled decision in the cases which are relied upon by the majority of the court to sustain their conclusion in this case, viz. Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. 315, 28 L. Ed. 360, and Sutliff v. Commissioners, 147 U. S. 230, 13 Sup. Ct. 318, 37 L. Ed. 145. In those cases there was absence of statutory authority for the issuance of the bonds. In Dixon Co. v. Field it was ruled that under the constitution of Nebraska there must be authority of law by statute of the legislature for every issue of bonds in aid of a railroad or other internal improvement. In the absence of such statute, it was held that bonds were issued without warrant of law. The court said:

"All parties are equally bound to know the law; and a certificate reciting the actual facts, and that thereby the bonds were conformable to the law, when, judicially speaking, they are not, will not make them so, nor can it work an estoppel upon the county to claim the protection of the law."

In Sutliff v. Commissioners it was held that, where the constitution and the statute of a state forbid a county to issue bonds to an

amount such as will make its indebtedness exceed a certain proportion of the assessed valuation of its taxable property, and the statute provides that semiannual statements, showing the total amount of the county's debt, shall be published and entered upon the public records of the county, a purchaser of a bond issued in excess of the constitutional and statutory limit is charged with the duty of examining the record; and the county is not estopped by a recital in the bond that all the provisions of the statute have been complied with. In both cases the question was one of the preliminary authority to take the initial step towards the issuance of the bonds. The question of the existence of that authority was referable to the constitution and the statutes, and in the Sutliff Case to a public record, which the statute expressly required, and to which it directed attention. The fact is not overlooked that incidentally in the opinion in Dixon Co. v. Field it was said that:

"Where the validity of the bonds depends upon an estoppel, claimed to arise upon the recitals of the instrument, the question being as to the existence of power to issue them, it is necessary to establish that the officers executing the bonds had lawful authority to make the recitals, and to make them conclusive."

What was meant by this language of the court is indicated by the decisions which are cited to sustain it. It was not meant that, before such recitals might bind the corporation, the statute must first in words have defined the powers of municipal officers to decide preliminary questions, and have recited the language of the representations which the bonds might contain. It was meant that, wherever it might be inferred from statutory authority that the officers whose duty it was to execute such instruments were to determine for themselves for their own guidance that the preliminary steps had been taken, or that the conditions of fact existed upon which they might proceed, and that they were to act thereupon, their recital of those facts should be conclusive. Thus, in Marcy v. Township of Oswego, 92 U. S. 638, 23 L. Ed. 748, cited by the court in Dixon Co. v. Field, it was said that:

"Where it may be gathered from the legislative enactment that the officers or persons designated to execute the bonds were invested with power to decide whether the contingency had happened, or whether the fact existed which was a necessary precedent to any subscription or issue of the bonds, their decision is final in a suit by the bona fide holder of the bonds against the municipality; and a recital in the bonds that the requirements of the legislative act have been complied with is conclusive."

Of similar import are the remarks of Mr. Justice Bradley, speaking for the court, in County of Warren v. Marcy, 97 U. S. 104, 24 L. Ed. 977, and the decision of the court in Oregon v. Jennings, 119 U. S. 74, 92, 7 Sup. Ct. 124, 30 L. Ed. 323, in which it was held that by virtue of the statutory authority to the supervisor and the clerk of the town to sign the bonds it was implied that they were the persons intrusted with the duty to decide, before issuing the bonds, whether the conditions determined at the election existed. The ruling in Hackett v. Ottawa has not been modified by any subsequent decision of the supreme court. It was expressly approved in Ottawa v. Bank, 105 U. S. 342, 26 L. Ed. 1127, where it was held that the purchaser of bonds was relieved from the duty of taking notice of

the provisions of ordinances whose titles were recited in the bonds "by reason of the representation upon the face of the bonds that the ordinances provided for a loan for municipal purposes." It was impliedly approved in Sherman Co. v. Simons, 109 U. S. 737, 3 Sup. Ct. 502, 27 L. Ed. 1093, and in Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613, 40 L. Ed. 760. In the latter case the bonds contained the recital that they were issued by virtue of a certain designated act of the legislature, "as well as by virtue of a resolution of the city council ordering an election of the qualified voters of the city, which resulted in a legal majority in favor of such subscription." The court said:

"As, therefore, the recitals in the bonds import compliance with the city's charter, purchasers for value, having no notice of the nonperformance of the conditions precedent, were not bound to go behind the statute conferring the power to subscribe, and to ascertain, by an examination of the ordinances and records of the city council, whether those conditions had, in fact, been performed. With such recitals before them, they had the right to assume that the circumstances existed which authorized the city to exercise the authority given by the legislature."

In the United States circuit court of appeals the same doctrine has been applied. In Risley v. Village of Howell, 12 C. C. A. 218, 64 Fed. 453, the question arose whether a bona fide purchaser of bonds was chargeable with notice, and defeated in his right to recover, by the fact that an ordinance referred to in the bonds, and mentioned as an ordinance of a certain date, misappropriated the bonds to an unlawful use. The court held that, inasmuch as the common council had authority to issue bonds of the nature of those which were involved in the suit, the defendant was estopped from setting up the fraudulent conduct of its own officials in misapplying the proceeds thereof. In City of Huron v. Second Ward Sav. Bank, 30 C. C. A. 38, 86 Fed. 272, the bonds in the controversy recite that they were issued for the purpose of refunding the "bonds, warrants, or floating debt" of the city. It was held that the corporation was estopped from defending an action by an innocent purchaser on the ground that the warrants or bonds which they were issued to satisfy were void, or that the debt which they were issued to pay was fictitious. In City of South St. Paul v. Lamprecht Bros. Co., 31 C. C. A. 585, 88 Fed. 449, it was held that the issuance of bonds containing the recital that they were "authorized by" a certain act of the legislature estops a municipality from tendering proof that they were issued in the construction of a bridge, a portion of which was outside the corporate limits.

In Jasper Co. v. Ballou, 103 U. S. 752, 26 L. Ed. 422, it was said:

"There must be a time when the people in their political capacity are concluded by their contracts as much as individuals, and we think that where the people of a county, at an election held according to law, authorize their corporate or political representatives to treat certain outstanding county obligations as 'properly authorized by law' for the purpose of negotiating a settlement with the holders, and the settlement which was contemplated has been made, all contests as to the validity of the obligations must be considered as ended."

In the case at bar the city of Santa Cruz, by its ordinance adopted at the institution of the proceedings on which the bonds were issued,

by the election notice which was issued and published, by the vote of its citizens at such election, and by the recitals which its bonds contained, declared that the outstanding obligation of the city which was evidenced by the water bonds, which it had assumed to pay, was a portion of the city's bonded indebtedness, which it might refund under the act. Through all the transactions culminating in the delivery of the bonds it is clear that the officers of the city acted in the utmost good faith. There was no fraud, misrepresentation, or concealment. They honestly believed the refunding of the bonds of the water company to be within the purview of the statute, and, if they had ever received the proceeds of the refunding bonds, they would doubtless have applied them to the discharge of that obligation. I submit that the city is estopped to deny its liability, and that the judgment of the circuit court should be affirmed.