## DIXON COUNTY *v.* FIELD.

IN ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF NEBRASKA.

Submitted January 2d, 1884.—Decided March 24th, 1884.

*Estoppel—Legislative Authority—Municipal Corporations—Nebraska.*

There must be authority of law, by statute, for every issue of bonds of a municipal corporation as a gift to a railroad or other work of internal improvement.

When the Constitution or a statute of a State requires as essential to the validity of municipal bonds that they shall be registered in a State registry and receive by indorsement a certificate of one or more State officers showing that they are issued in pursuance of law, and the Constitution or law gives no conclusive effect to such registration or to such certificate, the municipality is not concluded by the certificate from denying the facts certified to.

A recital in a municipal bond of facts which the corporate officers had authority by law to determine and to certify estops the corporation from denying those facts; but a recital there of facts which the corporate officers had no authority to determine, or a recital of matters of law does not estop the corporation.

Section 2, Article XII. of the Constitution of Nebraska, which took effect November 1st, 1875, conferred no power upon a county to add to its authorized or existing indebtedness, without express legislative authority; but it limited the power of the legislature in that respect by fixing the terms and conditions on which alone it was at liberty to authorize the creation of municipal indebtedness.

This was a suit to recover the amount of overdue interest coupons on bonds issued by the plaintiff in error in aid of a railroad. The defence was that the bonds were issued in violation of provisions of the Constitution of Nebraska which are set forth in the opinion of the court, and without legislative authority. The holder of the bonds contended that the municipality was estopped from setting up this defence by reason of certain recitals in the bonds, and of certain certificates of State officers on the back of them, which are also referred to in the opinion. The judgment below was against the county. This writ of error was sued out to review that judgment.

*Mr. A. J. Poppleton* and *Mr. J. M. Thurston* for plaintiff in error.

*Mr. W. L. Joy* and *Mr. George G. Wright* for defendant in error, to the point that the construction of the laws in question belongs to the domain of general jurisprudence, and that this court is not bound by the judgment of the State court, cited *Township of Pine Grove* v. *Talcott*, 19 Wall. 666; *Olcott* v. *Supervisors*, 16 Wall. 678; *Foote* v. *Johnson County*, 5 Dillon, 281; *Gelpcke* v. *Dubuque*, 1 Wall. 175; *Butz* v. *Muscatine*, 8 Wall. 575. To the point that the county was estopped by the recitals, they cited *Marcy* v. *Township of Oswego*, 92 U. S. 637; *Town of Coloma* v. *Eaves*, 92 U. S. 484; *Bissell* v. *Jeffersonville*, 24 How. 287; *Van Hostrup* v. *Madison City*, 1 Wall. 291; *St. Joseph Township* v. *Rogers*, 16 Wall. 644; *Knox County* v. *Aspinwall*, 21 How. 539; *Meyer* v. *Muscatine*, 1 Wall. 384; *Mercer County* v. *Hackett*, Ib. 83; *Moran* v. *Miami County*, 2 Black, 722; *Town of Venice* v. *Murdock*, 92 U. S. 494; *Converse* v. *City of Fort Scott*, Ib. 503; *Commissioners of Douglass County* v. *Bolles*, 94 Ib. 104; *Commissioners of Johnson County* v. *January*, Ib. 202. To the point that, even if State courts had held the bonds invalid, the rights of a non-resident *bona fide* holder in a federal tribunal would not be affected thereby, they cited *Pana* v. *Bowler*, 107 U. S. 528. To the point that the plaintiffs could recover, even if the company had not complied with its contract, they

cited *Kirkbridge* v. *Lafayette County*, 108 U. S. 208 ; *American Life Insurance Company* v. *Bruce*, 105 U. S. 328 ; *Mayor* v. *Kelley*, 2 Fed. Reporter, 468. To the point that the certificates protected the holders of bonds, although issued in excess of the percentage, they cited *Humboldt* v. *Long*, 92 U. S. 642 ; *Wilson* v. *Salamanca*, 99 U. S. 494 ; *Hawley* v. *Fairbanks*, 108 U. S. 544 ; *County of Kankakee* v. *Ætna Life Insurance Company*, 106 U. S. 668 ; *Ottawa* v. *National Bank*, 105 U. S. 342 ; *Third National Bank of Syracuse* v. *Seneca Falls*, 15 Fed. Rep. 783.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

This writ of error brings into review a judgment in favor of the defendant in error, for the amount of certain overdue coupons upon municipal bonds, purporting to be obligations of the plaintiff in error.

The facts upon which the judgment is based are as follows :

1. The defendant in error is the innocent holder for value of the coupons sued on, and of the bonds to which they belong. These bonds are part of a series, eighty-seven in number, being for $1,000 each, payable to the Covington, Columbus and Black Hills Railroad Company or bearer, in New York, on January 1st, 1896, with interest from January 1st, 1876, until paid, at the rate of ten per cent. per annum, payable semi-annually. They are executed in proper form under the seal of the county, and were issued as a donation to the railroad company in aid of the construction of its road.

2. Each bond contained the recital that it was "issued under and in pursuance of an order of the county commissioners of the County of Dixon, in the State of Nebraska, and authorized by an election held in said county on the 27th day of December, 1875, and under and by virtue of chapter 35 of the General Statutes of Nebraska, and amendments thereto, and the Constitution of said State, art. 12, adopted October, A. D. 1875.

3. On the back of each bond was the certificate of the county clerk reciting that this issue of bonds was the only one ever made by the county ; that " the question of issuing said bonds was submitted to the people of the county by a resolution of the

county commissioners, dated November 24th, 1875, in the following form : Shall Dixon County issue to the C. C. & Black Hills Railroad Company, $87,000 ten per cent. twenty years' bonds, payable both principal and interest in New York city, and shall a tax be annually levied, in addition to the usual taxes, sufficient to pay the interest as it becomes due, and accumulate a sinking fund to pay the principal at maturity ? " and further, " this question was decided by a vote taken December 27th, 1875, of 462 votes for and 120 against." This certificate is witnessed by the hand and official seal of the clerk, of date May 16th, 1876.

4. There was also indorsed on each bond the certificate of the secretary and auditor of the State of Nebraska, dated October 2d, 1876, that " it was issued pursuant to law," and the further certificate of the auditor of same date " that upon the basis of data filed in my office, it appears that the attached bond has been regularly and legally issued by the county of Dixon to C. C. & B. H. Railroad Company, and said bond, upon presentation thereof by said company, has this day been duly registered in my office in accordance with the provisions of an act entitled ' An Act to authorize the registration, collection and redemption of county bonds, approved February 25th, 1875.' "

5. That the assessed valuation of all the taxable property of the county of Dixon, the plaintiff in error, at the last previous assessment and valuation, made in the spring of 1875, and which continued in force until the spring of 1876, and which was shown and appeared from the books of public record of said county, was five hundred and eighty-seven thousand three hundred and thirty-one ($587,331) dollars and no more ; and of which the amount of the bonds, issued in pursuance of said election, was more than ten per cent., but less than fifteen per cent.

The statute referred to on the face of the bonds, chapter 35 of the General Statutes of Nebraska, authorizes any county or city in the State " to issue bonds to aid in the construction of any railroad or other work of internal improvement, to an amount to be determined by the county commissioners of such county or the city council of such city, not exceeding ten per cent. of the assessed valuation of all taxable property in said

county or city," with an additional proviso requiring a previous submission of the question of issuing such bonds to a vote of the legal voters of the county or city, in the manner provided by law, for submitting to the people of a county the question of borrowing money. It was also provided that the proposition of the question should be accompanied by a provision to levy a tax annually for the payment of the interest on the bonds as it should become due; stating also the rate of interest and the time when the principal and interest should be made payable. Upon a majority of the votes cast being in favor of the proposition submitted, and a record thereof being made, and public notice given for a specific period of its adoption, it was required that the bonds should be issued. This act took effect February 15th,.1869. · On February 17th, 1875, it was amended so as to require two-thirds of the votes cast at such an election, instead of a mere majority, to be in favor of the proposition, so as to authorize the issue of the bonds.

The Constitution of Nebraska took effect November 1st, 1875. Section 2, art. XII. of that Constitution is as follows :

" No city, county, town, precinct, municipality or other subdivision of the State, shall ever make donations to any railroad or other works of internal improvement, unless a proposition so to do shall have been first submitted to the qualified electors thereof, at an election by authority of law: *Provided,* That such donations of a county, with the donations of such subdivisions, in the aggregate, shall not exceed ten per cent. of the assessed valuation of such county: *Provided further,* That any city or county may, by a two-thirds vote, increase such indebtedness five per cent. in addition to such ten per cent., and no bonds or evidences of indebtedness so issued shall be valid unless the same shall have indorsed thereon a certificate signed by the Secretary and Auditor of the State, showing that the same is issued pursuant to law."

The defence insisted upon at the trial in the Circuit Court was that the bonds were issued without authority of law and were void; and being there overruled, it is now relied on as error in the judgment, for which it should be reversed.

In support of the judgment, and of the validity of the bonds

on which it rests, it is said, that by the terms of the statute of February 15th, 1869, as amended by the act of February 17th, 1875, authority was given to the county to issue such bonds to an amount not exceeding ten per cent. on the assessed valuation of the taxable property in the county; that this act was not repealed by the adoption of the Constitution in 1875, but in fact was expressly continued in force, by section 1, article XVI., the schedule of that instrument, whereby it was "ordained and declared that all laws in force at the time of the adoption of this Constitution, not inconsistent therewith, &c., shall continue to be as valid as if this Constitution had not been adopted;" and that the authority conferred by this act to issue bonds to the extent of ten per cent. upon the assessed valuation of the taxable property in the county, was enlarged and extended by the proviso in the 2d section of the 12th article of the Constitution, so as, upon a two-thirds vote, which was in fact cast, in favor of the original proposition, to authorize an issue of bonds to the additional amount of five per cent. upon the same valuation without additional legislative authority. The construction claimed for the constitutional provision is, that whenever the legislature has authorized an issue of bonds to the extent of ten per cent. upon the basis named, the Constitution operates, upon that authority, *ex proprio vigore*, and empowers the county officers to submit a proposition for an issue of bonds to the extent of fifteen per cent. upon the same valuation, and to issue the bonds accordingly, if sanctioned by a two-thirds vote of the electors of the county. It would result from the adoption of this interpretation, that an act of the legislature authorizing an issue of bonds limited to the extent of ten per cent. upon the assessment, but requiring a previous two-thirds vote in favor of that proposition, would be unconstitutional and void, so far as it sought to limit the right to issue bonds to less than fifteen per cent. upon the assessed valuation of the taxable property in the county; it being, upon this supposition, a constitutional right and power of the county, when the statute authorized an issue of bonds at all, to increase the authorized amount upon a two-thirds vote by the maximum addition fixed by the Constitution.

Such a construction of the Constitution seems to be predicated upon the idea that one of the evils sought to be remedied by such provisions is the reluctance of legislative bodies to grant to municipal corporations sufficiently extensive privileges in contracting debts for purposes of internal improvement; but the history of constitutional amendment does not seem to us to justify this assumption.

On the contrary, we regard the entire section as a prohibition upon the municipal bodies enumerated, in the matter of creating and increasing the public debts, by express and positive limitations upon the legislative power itself. There must be authority of law, that is by statute, for every issue of bonds as a donation to any railroad or other work of internal improvement; and the election required as a preliminary may be determined by a majority vote, if the legislature so prescribes, in which event the amount of the donation of the county, with that of all its subdivisions, in the aggregate shall not exceed ten per cent. of the assessed valuation of the taxable property in the county; but the legislature may authorize an amount, not to exceed fifteen per cent. on the assessment, on condition, however, that at the election authorized for the purpose of determining that question, the proposition shall be assented to by a vote of two-thirds of the electors. It would be an anomalous provision, that whenever statutory authority was given to issue a prescribed amount of bonds, it should operate as an authority, upon a popular vote, not otherwise directed, to issue an amount in addition. We cannot think it was any part of the purpose of the Constitution of Nebraska to enable a county, either to add to its existing or its authorized indebtedness any increase, without the express sanction of the legislature; and are persuaded, on the contrary, that the true object of the proviso is to limit the power of the legislature itself, by definitely fixing the terms and conditions on which alone it was at liberty to permit the increase, as well as the creation of municipal indebtedness. The language of the proviso that seems to countenance a contrary construction, by words apparently conferring immediate power upon counties to increase their indebtedness, must be taken in connection with the express and posi-

tive prohibition of the body of the section. This denies to municipal bodies all power to make any donations to railroads or other works of internal improvement, except by virtue of legislative authority, and an election held to vote on the particular proposition in pursuance thereof. The proviso makes a special rule for a special case, and authorizes an additional amount of indebtedness, but only to be contracted in the contingency mentioned, and subject to the condition already prescribed for all donations, that is, by means of an election to decide the question submitted, held in pursuance of statutory authority. An indebtedness to the extent of ten per cent. on the assessed value of the taxable property may be authorized by statute, to be sanctioned by a mere majority of the popular vote; but no more than that amount shall be permitted by the legislature, except when approved by two-thirds of the electors; and in no event more than fifteen per cent. upon the assessment, in the aggregate, including any pre-existing indebtedness. Whether the whole amount of indebtedness, authorized by the Constitution, to the extent of fifteen per cent. on the assessed value of the taxable property may be contracted, by authority of an act of the legislature, authorizing its creation at one election upon a single vote, it is unnecessary to decide, for, in the present case, there was no legislative authority to create a debt in excess of the ten per cent. upon the assessment.

These views coincide with those expressed by the Supreme Court of Nebraska in the case of *Reineman* v. *The Covington, Columbus, &c., Railroad Company*, 7 Nebraska, 310, where the very question raised here was discussed and decided; so that the construction we have adopted of the Constitution of the State we cannot but regard as not only correct in itself, but as now the settled rule of decision, established by the highest judicial tribunal of the State.

It follows that the bonds in question were issued without warrant of law, and if the defence is permitted, must be declared void, and insufficient to support the judgment.

But it is argued on the part of the defendant in error that the plaintiff in error is estopped, by the recitals in the bonds, to allege their invalidity on this ground.

The recitals in the bonds, which are relied on for this purpose, are as follows:

"This bond is one of a series of eighty-seven thousand dollars issued under and in pursuance of an order of the county commissioners of the county of Dixon, in the State of Nebraska, and authorized by an election held in the said county on the twenty-seventh day of December, A. D. 1875, and under and by virtue of chapter 35 of the General Statutes of Nebraska, and amendments thereto, and the Constitution of the said State, article XII., adopted October, A. D. 1875."

These recitals, in conjunction with the certificate of the county clerk, and those of the Secretary and Auditor of State, it is claimed, declare a compliance with the law in the issue of the bonds, which, as against an innocent holder for value, cannot now be questioned.

The sixth section of chapter 35 of the General Statutes, act of February 15th, 1869, p. 93, provides that "any county or city which shall have issued its bonds in pursuance of this act shall be estopped from pleading want of consideration therefor;" and an act passed February 25th, 1875, authorizes the registration of county bonds, with a view to their collection and redemption. It requires the county officers, in the first place, to make registration of all the named particulars in respect to the bonds issued by them, a certified statement of which, made out and transmitted by them, is required to be recorded by the Auditor of State. Whenever the holders of county bonds shall present the same to the Auditor of State for registration, the auditor, upon being satisfied that such bonds have been issued according to law, it is further provided, shall register the same in his office in a book to be kept for that purpose, in the same manner that such bonds are registered by the officers issuing the same, and shall, under his seal of office, certify upon such bonds the fact that they have been regularly and legally issued, and that such bonds have been registered in his office in accordance with the provisions of the act. This registration is made the basis on which he ascertains the amount of taxes annually to be levied to meet the accruing interest and sinking fund to

be certified to the county clerk, who is to ascertain and levy the tax for that purpose, to be collected and paid to the county treasurer.

The section of article XII. of the Constitution already cited, requires, as essential to the validity of municipal bonds, an indorsement thereon of a certificate signed by the Secretary of State and Auditor of State showing that the same is issued in pursuance of law.

No conclusive effect is given by the Constitution or the statute to this registration, or to these certificates; and in the consideration of the question of estoppel, they may be laid out of view. In any event, they could not be considered as more comprehensive or efficacious than the statements contained in the body of the bonds, and verified by the signature of the county officers and the seal of the county, except as additional steps, required to be taken in the process of issuing the bonds and rendered necessary to their validity.

Recurring then to a consideration of the recitals in the bonds, we assume, for the purposes of this argument, that they are in legal effect equivalent to a representation, or warranty, or certificate on the part of the county officers, that everything necessary by law to be done has been done, and every fact necessary, by law, to have existed, did exist, to make the bonds lawful and binding.

Of course, this does not extend to or cover matters of law. All parties are equally bound to know the law; and a certificate reciting the actual facts, and that thereby the bonds were conformable to the law, when, judicially speaking, they are not, will not make them so, nor can it work an estoppel upon the county to claim the protection of the law. Otherwise it would always be in the power of a municipal body, to which power was denied, to usurp the forbidden authority, by declaring that its assumption was within the law. This would be the clear exercise of legislative power, and would suppose such corporate bodies to be superior to the law itself.

And the estoppel does not arise, except upon matters of fact which the corporate officers had authority by law to determine and to certify. It is not necessary, it is true, that the recital

should enumerate each particular fact essential to the existence of the obligation. A general statement that the bonds have been issued in conformity with the law will suffice, so as to embrace every fact which the officers making the statement are authorized to determine and certify. A determination and statement as to the whole series, where more than one is involved, is a determination and certificate as to each essential particular. But it still remains, that there must be authority vested in the officers, by law, as to each necessary fact, whether enumerated or non-enumerated, to ascertain and determine its existence, and to guarantee to those dealing with them the truth and conclusiveness of their admissions. In such a case the meaning of the law granting power to issue bonds is, that they may be issued, not upon the existence of certain facts, to be ascertained and determined whenever disputed, but upon the ascertainment and determination of their existence, by the officers or body designated by law to issue the bonds upon such a contingency. This becomes very plain when we suppose the case of such a power granted to issue bonds, upon the existence of a state of facts to be ascertained and determined by some persons or tribunal other than those authorized to issue the bonds. In that case, it would not be contended that a recital of the facts in the instrument itself, contrary to the finding of those charged by law with that duty, would have any legal effect. So, if the fact necessary to the existence of the authority was by law to be ascertained, not officially by the officers charged with the execution of the power, but by reference to some express and definite record of a public character, then the true meaning of the law would be, that the authority to act at all depended upon the actual objective existence of the requisite fact, as shown by the record, and not upon its ascertainment and determination by any one; and the consequence would necessarily follow, that all persons claiming under the exercise of such a power might be put to proof of the fact, made a condition of its lawfulness, notwithstanding any recitals in the instrument.

This principle is the essence of the rule declared upon this point, by this court, in the well-considered words of Mr. Justice

Strong, in *Town of Coloma* v. *Eaves*, 92 U. S. 484, where he states (p. 491) that it is, "where it may be gathered from the legislative enactment that the officers of the municipality were invested with the power to decide whether the condition precedent has been complied with," that "their recital that it has been, made in the bonds issued by them and held by a *bona fide* purchaser, is conclusive of the fact, and binding upon the municipality; for the recital is itself a decision of the fact by the appointed tribunal."

The converse is embraced in the proposition and is equally true. If the officers authorized to issue bonds, upon a condition, are not the appointed tribunal to decide the fact, which constitutes the condition, their recital will not be accepted as a substitute for proof. In other words, where the validity of the bonds depends upon an estoppel, claimed to arise upon the recitals of the instrument, the question being as to the existence of power to issue them, it is necessary to establish that the officers executing the bonds had lawful authority to make the recitals and to make them conclusive. The very ground of the estoppel is that the recitals are the official statements of those to whom the law refers the public for authentic and final information on the subject.

This is the rule which has been constantly applied by this court in the numerous cases in which it has been involved. The differences in the result of the judgments have depended upon the question, whether, in the particular case under consideration, a fair construction of the law authorized the officers issuing the bonds to ascertain, determine and certify the existence of the facts upon which their power, by the terms of the law, was made to depend; not including, of course, that class of cases in which the controversy related, not to conditions precedent, on which the right to act at all depended, but upon conditions affecting only the mode of exercising a power admitted to have come into being. *Marcy* v. *Township of Oswego*, 92 U. S. 637; *Commissioners of Douglas County* v. *Bolles*, 94 U. S. 104; *Commissioners of Marion County* v. *Clark*, 94 U. S. 278; *County of Warren* v. *Marcy*, 97 U. S. 96; *Pana* v. *Bowler*, 107 U. S. 529.

In the present case there was no power at all conferred to issue bonds in excess of an amount equal to ten per cent. upon the assessed valuation of the taxable property in the county. In determining the limit of power, there were necessarily two factors : the amount of the bonds to be issued, and the amount of the assessed value of the property for purposes of taxation. The amount of the bonds issued was known. It is stated in the recital itself. It was $87,000. The holder of each bond was apprised of that fact. The amount of the assessed value of the taxable property in the county is not stated; but, *ex vi termini,* it was ascertainable in one way only, and that was by reference to the assessment itself, a public record equally accessible to all intending purchasers of bonds, as well as to the county officers. This being known, the ratio between the two amounts was fixed by an arithmetical calculation. No recital involving the amount of the assessed taxable valuation of the property to be taxed for the payment of the bonds can take the place of the assessment itself, for it is the amount, as fixed by reference to that record, that is made by the Constitution the standard for measuring the limit of the municipal power. Nothing in the way of inquiry, ascertainment or determination as to that fact, is submitted to the county officers. They are bound, it is true, to learn from the assessment what the limit upon their authority is, as a necessary preliminary in the exercise of their functions, and the performance of their duty ; but the information is for themselves alone. All the world besides must have it from the same source, and for themselves. The fact, as it is recorded in the assessment itself, is extrinsic, and proves itself by inspection, and concludes all determinations that contradict it.

The case is to be distinguished from *Marcy* v. *Township of Oswego,* 92 U. S. 637, where, although it was provided that the amount of the bonds voted by any township should not be above such a sum as would require a levy of more than one per cent. per annum on the taxable property of such township to pay the yearly interest, it was held that the existence of sufficient taxable property to warrant the amount of the subscription and issue, it not being designated as fixed by the as-

sessment, was one of those prerequisite facts to the execution and issue of the bonds, which was of a nature that required examination and decision, and had, been referred by the statute to the inquiry and determination of the board. In *Sherman County* v. *Simons*, 109 U. S. 735, the county commissioners were constituted by the statute the tribunal for the purpose of determining the amount of the indebtedness, in excess of which the bonds were not to be issued, and their decision was accordingly held to be conclusive.

On the other hand, it is within the principle of the decision in *Buchanan* v. *Litchfield*, 102 U. S. 278, where it was said, at page 289, that, "the purchaser of the bonds was certainly bound to take notice, not only of the constitutional limitation upon municipal indebtedness, but of such facts as the authorized official assessments disclosed concerning the valuation of taxable property within the city for the year 1873." And it is directly within the decision in *National Bank* v. *Porter Township*, 110 U. S. 608. In that case, the existence of the power to issue the township bonds in suit, depended upon the fact that the county commissioners had not been previously authorized by a popular vote, or an unreasonable delay in taking one, to make a subscription on behalf of the county. It was there said: "Whether they had not been so authorized, that is, whether the question of subscription had or had not been submitted to a county vote, or whether the county commissioners had failed for so long a time to take the sense of the people as to show that they had not, within the meaning of the law, been authorized to make a subscription, were matters with which the trustees of the township, in the discharge of their ordinary duties, had no official connection and which the statute had not committed to their final determination. Granting that the recital in the bonds that they were issued 'in pursuance of the provisions of the several acts of the General Assembly of Ohio,' is equivalent to an express recital that the county commissioners had not been authorized by a vote of the county to subscribe to the stock of this company, and that, consequently, the power conferred upon the township was brought into existence, still it is the recital of a fact arising out of the duties of county offi-

cers, and which the purchaser and all others must be presumed to know did not belong to the township to determine, so as to confer or create power, which under the law did not exist."

We hold, therefore, that the plaintiff in error is not estopped by the recitals in the bonds to deny their validity; and that having been issued in contravention of the Constitution of the State, they are without warrant of law and are void.

*The judgment of the Circuit Court is, therefore, erroneous, and must be reversed; and as the facts appear upon the pleadings and by a special verdict, the cause is remanded with directions to enter judgment for the defendant below.*