BRATTLEBORO SAV. BANK v. BOARD OF TRUSTEES OF HARDY TP., HOLMES COUNTY, OHIO.

(Circuit Court, N. D. Ohio, E. D. December 23, 1899.)

No. 5,921.

1. TOWNSHIPS—STATUS IN OHIO—CONSTITUTIONALITY OF ACT AUTHORIZING ISSUANCE OF BONDS.

A township in Ohio is not a corporation, within the meaning of the state constitution; and article 13, § 1, of such constitution, providing that the legislature shall pass no special act conferring corporate powers, does not render invalid an act authorizing a township to issue bonds.

**2. MUNICIPAL BONDS—CONSTITUTIONALITY OF ACT AUTHORIZING—BONA FIDE PURCHASER.**

An act of the Ohio legislature, passed in 1893, authorizing a township to issue bonds for the purpose of refunding its then existing indebtedness, was not a law of a general nature, within the meaning of the state constitution (article 2, § 26), providing that all laws of a general nature shall have a uniform operation throughout the state, under the construction previously given such provision by the supreme court of the state; and it cannot be held invalid, as in violation of such constitutional provision, as against a bona fide purchaser of bonds issued by the township thereunder.

**3. SAME—DEFENSES AGAINST—ESTOPPEL BY RECITALS.**

An act authorizing the trustees of a township to issue bonds for the purpose of refunding its outstanding indebtedness, which contains no reference to any record of such indebtedness, or requirement that such a record shall be kept, but provides that the bonds shall contain a recital that they are issued under and by authority of such act, must be held to confer power on the trustees, who are the officers charged with the duty of incurring the indebtedness of the township, to recite in the bonds that the valid indebtedness of the township is such as to authorize their issuance under the act, in order to refund it; and such recital is conclusive on the township, in favor of a bona fide purchaser of the bonds.

This is a suit at law brought by the Brattleboro Savings Bank against the board of trustees of Hardy township, Holmes county, Ohio, to recover the amount due on one bond of said township, of an issue of 20 bonds, for $1,000 each, together with 40 interest coupons, —two from each of the 20 bonds,—which are averred to be due and unpaid. The bonds are in the form following:

"United States of America, State of Ohio, Holmes County, Hardy Township. "No. ———.                    Refunding Bond.                    1,000 Dollars.

"Know all men by these presents, that the township of Hardy, in Holmes county, state of Ohio, is indebted to and promises to pay the bearer the sum of one thousand dollars, in lawful money of the United States of America, at the township treasurer's office of said Hardy township, Millersburg, Ohio, on the first day of July, A. D. 1——, with interest thereon at the rate of six per cent. per annum, payable semiannually on the first day of January and July of each year, upon the presentation and delivery of the proper coupon hereunto annexed, signed by the township clerk, at the township treasurer's office of said Hardy township, Millersburg, Ohio, for the payment of which sum and interest the said township is hereby held and firmly bound; and its faith and credit and all the real and personal property in said township is hereby pledged for the prompt payment of this bond and interest at maturity. This bond is one of a series of bonds of like date, tenor, and effect, issued for the purpose of procuring the necessary means to refund and pay the present existing and outstanding indebtedness of said township. This bond is issued and executed under and by authority of, and in accordance with, the provisions of an act of the general assembly of the state of Ohio passed on the first day of February, A. D. 1893. And it is hereby certified and recited that all acts, conditions, and things required to be done precedent to and in the issuing of said bonds have been properly done, happened, and performed, in regular and due form as required by law, and that the indebtedness which is refunded by this series of bonds does not exceed in amount the actual amount of outstanding indebtedness, and is a valid, subsisting, and legal obligation of said township, and that neither the indebtedness so refunded nor this series of bonds exceed the statutory or constitutional limitation. In testimony whereof, we, the undersigned officers of Hardy township, Holmes county, state of Ohio, being duly authorized to execute this obligation on its behalf, have hereunto set our official signatures this 4th day of February, A. D. 1893.                    John Fitch,

                                                            "John P. Larimer,
                                                            "Samuel Devore,
                                                    "Trustees of Hardy Township.

"G. U. Duer, Township Clerk."

The act under which the bonds purport to be authorized is entitled, "An act to authorize the trustees of Hardy township, in Holmes county, Ohio, to issue and sell the bonds of said township for the purpose of paying off and satisfying the present existing outstanding indebtedness of said township." It was passed February 1, 1893, and is found in 90 Ohio Laws (Local Laws) p. 291, and is as follows: ·

"Section 1. Be it enacted by the general assembly of the state of Ohio, that the township trustees of Hardy township, Holmes county, Ohio, are hereby authorized and empowered to issue the bonds of said township for the purpose of paying off and satisfying all, or any portion of the present, existing, outstanding indebtedness of said township. If it shall appear to the said board of trustees to be for the best interest of said township, they shall have the power and are hereby authorized to sell at not less than their par value at public or private sale, the negotiable bonds of said township at a rate of interest not to exceed six per cent. per annum, interest payable semi-annually, provided, however, that the amount of bonds issued and sold shall not exceed the amount of the present existing, outstanding indebtedness.

"Sec. 2. Said bonds shall be of denominations of $1,000 each, shall be numbered consecutively commencing with number 1, shall contain the recital that they are issued under and by authority of this act. The bonds shall be designated as refunding bonds and shall be signed by the trustees of said township and countersigned by the township clerk; one $1,000 bond shall become due and payable on the first day of July, 1898, and one bond of $1,000 on the first day of July of each and every year thereafter until all of the said bonds are paid. Both principal and interest of said bonds shall be payable at the township treasurer's office in said Hardy township. After said bonds have been sold, the proceeds shall be applied to the payment of the said existing outstanding indebtedness of said township, and for no other purpose.

"Sec. 3. Said bonds shall have interest coupons attached evidencing the several instalments of interest as they become due, which coupons shall be signed by the clerk of said township. Said township trustees are hereby authorized and empowered to levy, annually, a tax on all the taxable property in said township, sufficient to pay both principal and interest of said bonds, as they severally become due.

"Sec. 4. This act shall take effect and be in force from and after its passage."

A jury was waived, and the cause submitted to the court.

It is agreed that the bonds were duly executed and signed in accordance with the provisions of the statute by the officers purporting to sign them, and that the plaintiff bank purchased the entire issue of the bonds, through Spitzer & Co., brokers, of Boston; that the interest on the bonds was paid from the date of their issue to July, 1897; that the plaintiff had no knowledge whatever of any defect in the issue of the bonds, or that the valid indebtedness of the township, existing at the time of their issue, exceeded the amount of the bonds. The defendant offered evidence to show that the only indebtedness of Hardy township which these bonds were issued to meet arose under the act of April 6, 1892, entitled "An act to authorize Hardy township, Holmes county, to issue and sell bonds of said township, for the purpose of aiding and encouraging public improvements, to an amount not exceeding $40,-000" (89 Ohio Laws, p. 597); that this act contemplated the use of the proceeds of the bonds to encourage the construction of railroads and mechanical establishments in the village of Millersburg, in said township, and the appointment of 15 trustees to superintend the expenditure of the fund thus raised; that the act contemplated a vote of the people; that the vote was had; that the bonds were issued; that there was no indebtedness whatsoever except these outstanding railroad improvement bonds thus issued under the act of 1892, as would appear by the records of the township; that the money from these bonds went to the township treasurer, and thence to the trustees for the public improvement under the act of 1892, and that the trustees of the township received and expended no part of it; that, in the contract for the sale of the first bonds under the act of 1892, there was a stipulation that the purchaser should receive for the bonds thereby about to be issued refunding bonds; and that this contract for refunding bonds was spread on the records of the township. Under this offer the evidence was held to be incompetent, in the absence

of further evidence showing that the plaintiff had actual notice of the facts offered to be proved.

Harris & Harris, for plaintiff.

Stilwell & Bailey, M. L. Smyser, and W. F. Kean, for defendant.

TAFT, Circuit Judge (after stating the facts as above). The first question which arises is whether the act of 1893, above recited, is valid; for, of course, if the act under which the bonds purport to be issued is without constitutional authority, then it could confer no power to issue the bonds here in suit. Two objections are made to the validity of the act:

1. It is said that it is in violation of section 1, art. 13, of the constitution of Ohio, providing that the general assembly shall pass no special act conferring corporate powers. It was at first contended that this imposed only a limitation upon the right to pass laws of incorporation, and did not limit the power of the legislature of conferring additional faculties upon a corporation already created. But it is now settled that an act confers corporate powers which either creates a corporation or adds to the powers of a corporation already existing. Atkinson v. Railroad Co., 15 Ohio St. 21, and State v. City of Cincinnati, 20 Ohio St. 18, 36. If the trustees of Hardy township are a corporation, within the meaning of this section of the constitution, then the act giving them the power to issue bonds for refunding purposes is certainly a corporate power. It appears that for certain purposes the trustees of a township in Ohio are created a body corporate. Section 1376. Thus, it is argued that the power conferred upon them must be a corporate power. The contention must fail, however, upon clearly-settled authority. The section of the constitution in question applies only to powers conferred upon private corporations and powers conferred upon public municipal corporations. The constitution recognizes both of these classes of corporations as such. It treats as entities, or quasi entities, of a different character, counties, townships, and school districts; and even though the legislature sees fit by statute to create these so-called quasi corporations, which are mere instrumentalities or branches of the state government for local purposes, into corporations by name, it does not thereby bring them within the inhibition of the section under consideration, which applies only to such corporations as were covered in the constitution under that name. It is settled in Ohio that neither the township nor its trustees are invested by section 1376 with the general powers of a corporation. Trustees v. Miner, 26 Ohio St. 452, 456. In State v. Powers, 38 Ohio St. 54, the question was whether an act which conferred upon a particular school district in the township of New London, in Huron county, Ohio, certain powers, was a special act conferring corporate power, within the inhibition of the constitution. Judge McIlvaine, in delivering the opinion of the court, said:

"Whether powers conferred by the legislature upon a common-school district be corporate or not, within the meaning of the provisions of the constitution, cannot be determined definitively by the mere fact that such district or its board of education is declared by statute to be a corporation, but rather by

the object of its creation and the nature of its functions. The district is organized as a mere agency of the state in maintaining its public schools, and all its functions are of a public nature. The evils which this provision was intended to prevent are not found in the special privileges conferred upon such public agencies. The evils sought to be prevented were such as resulted from special privileges conferred upon private corporations. That the inhibition extends to municipal corporations, cities, and villages, has been settled by adjudications. See State v. City of Cincinnati, 20 Ohio St. 18, and 23 Ohio St. 445; State v. Mitchell, 31 Ohio St. 592, and cases there cited. In reference to these decisions, it is proper to remark that many of the powers and franchises of municipal corporations are of a private and local character, essentially different from those of mere political subdivisions of the state, commonly called 'quasi corporations.' And, again, cities and villages are classified as corporations, and provided for in article 13 of the constitution, which relates solely to corporations, section 6 of which provides for their organization by general laws; so that the decisions referred to, in which the inhibition of the 1st section is held to apply to municipal corporations, are of no weight on the proposition that school districts or other political subdivisions of the state are subject to the same inhibition. On the other hand, school districts are constituted so as to partake rather of the character of counties and townships, which are provided for in the tenth article of the constitution, not as corporations, but as mere subdivisions of the state for political purposes, as mere agencies of the state in the administration of public laws. Hunter v. Commissioners, 10 Ohio St. 515; State v. City of Cincinnati, 20 Ohio St. 18. In this article reference is made to 'similar boards' in connection with the commissioners of counties and trustees of townships. It is quite obvious to us that county and township organizations, although quasi corporations, are not within the meaning of this provision of the constitution; and, upon full consideration, we are unanimous in the opinion that school districts, as similar organizations, though declared by statute to be bodies politic and corporate, are not within the reason or meaning of this inhibition of the constitution. Beach v. Leahy, 11 Kan. 23, a case exactly in point."

The case cited by the supreme court, with approval, from 11 Kan., involved the validity of an act authorizing school district No. 2, Neosho county, Kan., to issue bonds to build a school house. The constitution of Kansas contained a clause exactly like the one under consideration, forbidding the legislature to pass "any special act conferring corporate powers." By statute the legislature of Kansas had provided that every school district organized in pursuance of the act should be a body corporate, and should possess the usual powers of a corporation for public purposes. It was held by the supreme court of Kansas (Mr. Justice Brewer delivering the opinion) that school districts, though created into corporations by the legislature, were not corporations within the meaning of the constitution, and that power conferred upon them by the special act was not thereby inhibited. See, also, Hunter v. Commissioners, 10 Ohio St. 515; State v. City of Cincinnati, 20 Ohio St. 18, 37; Finch v. Board, 30 Ohio St. 37.

The opinion of Judge Scribner in delivering the opinion of the circuit court of Huron county in the case of Eckstein v. Board, 10 Ohio Cir. Ct. R. 480, 490, expressing the view that an act conferring upon the authorities of the Chicago Junction village school district power to borrow money and issue bonds is a special act conferring corporate power, within the Ohio constitution, cannot, in view of the cases already cited, be regarded as an authoritative exposition of this constitutional limitation. It seems to be

held by the court, through the learned judge, that the power to issue bonds and borrow money is a corporate power, upon whomsoever it may be conferred, and therefore that, if conferred upon a school district, it is within the constitutional restriction. In this view I cannot concur. There is no reason why a natural person may not issue bonds and secure them by mortgage. The power thus exercised is not corporate, therefore, except when it is conferred upon a corporation; and it is not corporate, within the Ohio constitution, except when it is conferred upon a corporation such as that instrument contemplated in the inhibition. The point to which the case is cited was clearly in judgment by the court, but it was a question ancillary to the main question considered in the opinion, and did not, evidently, have the careful consideration which the main question had.

2. A more serious objection to the validity of this act is based upon article 2, § 26, of the Ohio constitution, providing that all laws of a general nature shall have a uniform operation throughout the state. In the case of Cass v. Dillon, 2 Ohio St. 607, it was held that an act of the general assembly, passed on March 24, 1851, to authorize the county of Muskingum to subscribe to the capital stock of the Cincinnati, Wilmington & Zanesville Railroad Company, upon the condition that such subscription should be first approved by a majority of the qualified electors of the county, to be ascertained at an election held upon notice for that purpose, was not an act which, having been passed by the legislature prior to the going into effect of the constitution of 1851, was repealed by section 1 of the schedule, providing that all laws in force on the 1st day of September, 1851, not inconsistent with this constitution, should continue in force until amended or repealed. It was held expressly in this case that such a law was not inconsistent with article 2, § 26, providing that all laws of a general nature shall have a uniform operation throughout the state. Judge Thurman, delivering the majority opinion of the court, said:

"We are also referred to section 26 of article 2, which provides that 'all laws of a general nature shall have a uniform operation throughout the state; nor shall any act, except such as relates to public schools, be passed, to take effect upon the approval of any other authority than the general assembly, except as otherwise provided in this constitution.' That the first branch of this section has had the effect to abolish certain laws of a general nature, whose operation was confined to particular localities, I have not the least doubt; but the act under consideration is not a law of that character. That it is a public law, of which the courts ex officio take notice, may well be admitted; but it does not follow that it is of a general nature. It is no more of a general nature than would be an act to authorize the construction of a bridge or the erection of a poor house. As well might it be said that the act authorizing Hamilton county to build a jail (49 Ohio Laws, p. 130) was of a general nature, and therefore repealed. All such acts are, of necessity, local in their character. The origin of this section is perfectly well known. The legislature had often made it a crime to do in one county, or even township, what it was perfectly lawful to do elsewhere, and had provided that acts, even for the punishment of offenses, should be in force, or not, in certain localities, as the electors thereof respectively might decide. It was to remedy this evil and prevent its recurrence that this section was framed. How far it reaches, it is not now necessary to decide. That it may be difficult sometimes to say whether an act is within the meaning, or not, is very probable. But certainly it cannot

be doubted that where, in the nature of things, the character of an act is necessarily local, the first branch of the section has no application."

Cass v. Dillon was followed in a number of cases thereafter presenting substantially the same question.

In State v. Trustees, 8 Ohio St. 394, the question was whether an act conferring authority on the trustees of Union township, Fayette county, to subscribe for stock in a railroad company, and to issue bonds, was invalid, as being inconsistent with the constitution of 1851, though passed before the going into effect of the constitution; and the act was sustained. In State v. Judges, 21 Ohio St. 1, it is held that an act limiting the compensation of certain officers therein named, intended to apply to Hamilton county only, was not a law of a general nature, but of a local nature, and therefore not in conflict with the section under consideration. In State v. Covington, 29 Ohio St. 102, it was held that an act to regulate the police force in cities of the first class was not a law of a general nature, which should have uniform operation throughout the state. In McGill v. State, 34 Ohio St. 228, the act of May 7, 1877, regulating the selection of jurors in the county of Cuyahoga, was held not to be a law of a general nature, within the meaning of this section. In State v. Hoffman, 35 Ohio St. 435, an act providing for the relief of W. M. Corry from an assessment under public improvement in the city of Cincinnati, in Hamilton county, is held to be an act of local and temporary nature, and that the relief was not of the character which should necessarily be granted by general law. In State v. Commissioners, 35 Ohio St. 458, it is held that an act providing for the improvement of a certain designated county road was local in its nature, and not in conflict with this section. In State v. Board, 38 Ohio St. 3, it is held that an act requiring the board of education of a city to release the sureties of a county treasurer from liability for school funds of the board which came to the hands of the treasurer for disbursement was not a general act. In State v. Powers, 38 Ohio St. 54, an act to consolidate the territory comprising the township of New London, Huron county, into a special school district, was held to be in conflict with the section in question, on the ground that the public schools in the state of Ohio, and their conduct and management, were matters of a general nature. The case of State v. Powers, in this regard, was expressly overruled in the case of State v. Shearer, 46 Ohio St. 275, 20 N. E. 335, in which it was held that the subject of dividing territory into school districts is in its nature local, and hence the formation of a special school district from territory within the limits of a township, by special act, was not in conflict with section 26, art. 2, of the constitution. The first paragraph of the syllabus in the Shearer Case, which, in Ohio, states the law of the case, is as follows:

"(1) A law is not necessarily of a general nature by reason simply of its being upon a general subject. (2) Special legislation upon a subject-matter in its nature local is not prohibited by section 26 of article 2 of the constitution, notwithstanding the subject-matter is the subject of a general law."

The case of State v. Shearer was cited approvingly in the case of Metcalf v. State, 49 Ohio St. 586, 31 N. E. 1076.

In Hart v. Murray, 48 Ohio St. 605, 29 N. E. 576, it was held that an act providing for compensation for justices of the peace in certain cities of the second grade of the first class in the state, in lieu of fees, was not a law of a general nature, but was local in its character, and did not come within the constitutional inhibition.  In State v. Kendle (decided in 1895) 52 Ohio St. 346, 39 N. E. 947, it was held that the act of the general assembly requiring common pleas judges in the several subdivisions of the common pleas districts of the state to appoint jury commissioners was not in conflict with the section under consideration, although it did not operate in six counties of the state.  On the other hand, it has been held, under the same section, in Ex parte Falk, 42 Ohio St. 638, that a statute providing punishment for an act which is malum in se wherever committed, being a law of a general nature, cannot be made local on the ground that the inhibited act is of greater evil in a large city than in other parts of the state.  In State v. Winch, 45 Ohio St. 663, 18 N. E. 380, it was held that an act passed April 12, 1876, to prevent gambling and the selling of intoxicating liquors on or within a certain distance of Chippewa Lake, in the county of Medina, was a law of a general nature, and invalid.  In State v. Ellet, 47 Ohio St. 90, 23 N. E. 931, it was held that an act to require the county commissioners of a certain county to provide a depository for the county funds was a law of a general nature, for the reason that the funds there deposited were part of the state funds, and concerned the people of the state.  In Commissioners v. Rosche, 50 Ohio St. 103, 33 N. E. 408, it is held that an act to provide for refunding of taxes erroneously paid under section 2742 of the Revised Statutes in counties containing a city of the first grade of the first class, was legislation of a general character, not having uniform operation, because there could be no reason why a taxpayer of Hamilton county should have any more speedy remedy for the recovery of illegally paid taxes than the taxpayer of any other county of the state.

These cases show the condition of the law down to the time when the bonds in the present case were issued and paid for.  It seems to me that a consideration of this act shows clearly that its object was of a local and temporary nature.  At this time townships were not authorized by general law to refund their indebtedness.  It might very well be (and we must assume in support of the law that it was the case) that the indebtedness of this township was of such a character that it could not be paid off readily by taxation, and needed to be refunded in long-time obligations.  The law does not apply to the future indebtedness of the township, but only to that which was in existence at the time of the passage of the act.  Now, while it is true that the refunding of township indebtedness may be provided for by general laws, this, under the decisions already quoted, and especially that in State v. Shearer, 46 Ohio St. 275, 20 N. E. 335, is not a reason for holding that the subject-matter of the special law is necessarily general.  In accordance with these decisions, it seems to me clear that at the time these bonds were issued the result of judicial construction of the constitution was that particular township indebtedness, as well as particular county indebtedness,

might be provided for by special act. Any other view cannot be reconciled with Cass v. Dillon, 2 Ohio St. 607, and State v. Trustees, 8 Ohio St. 394. It is true that in two decisions some years subsequent to the issuing of these bonds, to wit, in Hixson v. Burson, 54 Ohio St. 470, 43 N. E. 1000, and State v. Davis, 55 Ohio St. 15, 44 N. E. 511, the operation of section 26, art. 2, of the constitution, has been given a much broader effect, and the subject-matter of an act authorizing a particular county to build a county road, and a particular county to build a county bridge, and issue bonds therefor, has been declared to be of a general nature, and so invalid, because not having uniform operation. These decisions, however, expressly overrule the decision of the supreme court in State v. Commissioners, 35 Ohio St. 458, and are undoubtedly to be regarded as a change in the judicial construction of this section by the highest court of the state. I do not think it necessary to consider the question whether, even under these decisions, the legislation under discussion might not still be regarded as of a local nature, though the fact that the power might be conferred by a general act would seem, under those decisions, to render the special act conferring it invalid. It is quite sufficient to hold, in favor of a bona fide purchaser for value, that, under the judicial construction of the constitution in force at the time the bonds were issued, this act was not to be regarded as an act of a general nature, and was not, therefore, invalid. This principle is so well established that a reference need only be made, without discussion, to the cases. See Douglass v. Pike Co., 101 U. S. 677, 25 L. Ed. 968; Loeb v. Trustees (C. C.) 91 Fed. 37.

3. Reliance is had upon section 7 of article 10, whereby it is provided that the commissioners of counties, trustees of townships, and similar boards, shall have such power of local taxation for police purposes as may be prescribed by law. It is said that this limits the power of the trustees of townships to incur any indebtedness except for police purposes, because it is implied that the township cannot contract debts except for purposes for which it may levy a tax. This contention cannot be reconciled with the language of Judge Thurman in the case of Cass v. Dillon, 2 Ohio St. 607, 622, already referred to. But it is immaterial, in this case, whether the township has power to contract debts for other than police purposes, because there was nothing on the face of the bonds to show that the existing indebtedness was contracted for anything but police purposes.

The act under which the bonds were issued being valid, for the purposes of this suit by the plaintiff, the question next arises whether, in the face of the recitals of the bonds, the defendant is entitled to show that there was no valid existing indebtedness at the time the bonds were issued, and that the real purpose of issuing the bonds was to obtain money with which to comply with another act of the legislature authorizing the township to issue bonds for railroad purposes,—a purpose plainly in violation of the constitution of Ohio. The act contains no express provision as to who shall determine what was the amount of the present existing, outstanding indebtedness. The bonds, however, were to be issued by the trustees of the township. They were the officers of the township properly charged

with the duty of incurring the indebtedness of the township, and therefore with the duty of determining, primarily at least, what was its valid indebtedness, in fixing the tax rate for its payment. There is no provision in the act referring to a public record of the indebtedness, and no requirement that such a record should be kept in the act itself. The second section does contain a provision that the bonds shall contain a recital that they are issued under and by authority of this act. It seems to me clear that this provision intends to confer upon the trustees of the township, in issuing the bonds, power to make a recital which shall show that the bonds have been duly issued under the act, and therefore that the limit of indebtedness prescribed by the act has not been exceeded in their issue. In other words, the act confers, by implication, upon the township trustees, the power to recite the fact which they do recite in the bond, to wit, that the valid outstanding indebtedness of the township is such as to justify the issue of the bonds in order to refund it. The case therefore comes clearly within the decision of the supreme court of the United States in Commissioners v. Rollins, 173 U. S. 255, 19 Sup. Ct. 390, 43 L. Ed. 689; and not within the cases of Chaffee Co. v. Potter, 142 U. S. 355, 12 Sup. Ct. 216, 35 L. Ed. 1040; Dixon Co. v. Field, 111 U. S. 83, 4 Sup. Ct. 315, 28 L. Ed. 360; and Lake Co. v. Graham, 130 U. S. 674, 9 Sup. Ct. 654, 32 L. Ed. 1065. It comes, also, within the case of City of Cadillac v. Woonsocket Institution for Savings, by the circuit court of appeals for this circuit (7 C. C. A. 574, 58 Fed. 935), and within the case of City of Huron v. Second Ward Sav. Bank, 30 C. C. A. 38, 86 Fed. 272, and the cases there cited.

It is plain that it was not the legislative intention to refer the purchasers of these bonds to the records of the township, from which it might be possible to make out the liabilities of the township accruing from time to time; but it was intended by the recital on the face of the bonds to save the purchaser from this necessity, and to justify him in relying upon the honesty of those recitals, which were to be made, it may be observed, by the same officers of the township who, under the law, would contract that indebtedness, and must provide for its payment.

These views lead me to the conclusion that the plaintiff is, in this case, entitled to a judgment for the full amount of the bonds and coupons sued upon, with interest, as claimed in the petition.