278    CIRCUIT COURT REPORTS—NEW SERIES.

Raynolds et al v. City of Cleveland et al. [Vol. VIII, N. S.

## VALIDITY OF A STREET RAILWAY GRANT.

[Circuit Court of Cuyahoga County.]

WILLIAM M. RAYNOLDS ET AL V. THE CITY OF CLEVELAND ET AL.

Decided, February 26, 1906.

*Street Railways—Provision of Granting Ordinance—As to Publication for Bids—Amendment Declaratory of Compliance with Original Ordinance without Effect—Estoppel against Municipality—From Denying the Existence of Facts theretofore Declared to Exist—Provision as to Transfers not Unreasonable—Duty of Council—Rights of Grantee—Good Faith.*

1. Defects in a street railway franchise can not be cured by an amendment to the granting ordinance, which merely sets forth the facts as to what was done in the matter of publication of notice before the bids were received for the construction of the line, and declares that the publication was sufficient to meet the requirements of the granting ordinance.

2. A municipality may be estopped by its own acts; it can not deny the existence of facts which, by the action of its duly authorized officers, have theretofore been declared to exist, when such facts are necessary to authorize the doing of some other thing which has misled another to his prejudice.

3. A requirement as to the giving of transfers is one which council has a right to make, and is not rendered unreasonable by the fact that a company operating street railway lines intersecting the proposed line would be thereby placed at a disadvantage in the bidding.

MARVIN, J.; WINCH, J., and HENRY, J., concur.

Heard on appeal.

It would not be a profitable use of time to go into a full statement of the facts in this case. They are known to counsel in the case, and indeed to the public generally, having received much attention in the newspapers of the city.

The first matter to be considered is a motion, made by the plaintiff, to strike from the amended answer so much as sets up the facts in regard to the amendment of the ordinance of September 9, 1903, designated Ordinance No. 42846, the date of said amendment being January 11, 1904, the same being

approved by the mayor on the 12th day of January, 1904. This
amendment sets out the real fact as to what was done in the
matter of publishing notice before bids were received for the
construction of a street railroad on Dennison avenue, and then
declares that the publication of the ordinance establishing the
route, for two consecutive weeks, and the several newspaper
items published in regard to the matter was a sufficient com-
pliance with the requirements of Section 2 of the establishing
ordinance, requiring notice for bids to be published for three
consecutive weeks, and that these publications sufficiently ap-
prised the public of the time when bids would be received, and
then proceeds again to grant the franchise for the construction
of an electric railroad on Dennison avenue to Albert E. Green,
upon his acceptance in writing of the terms of the grant within
ten days after the passage of the amendment, and that he did
so accept within the time specified.

This suit was begun on the 11th of January, 1904, the very
day on which this amending ordinance was passed, and the day
before it was signed, and so, of course, before it could be pub-
lished and take effect. We do not understand that any defects
which existed in the defendant's franchise would be remedied
by the passage of this amendment. If the defendants can not
stand upon the facts as they existed at the time the suit was
brought, they can not stand upon the facts supplemented by
this so-called curative amendment, and the motion to strike the
same from the amended answer is sustained.

Upon the merits of the case we are in accord with what was
said in the court below upon several of the propositions, and
could not hope to more clearly express or give more cogent
reasons for the conclusions reached than are found in that
opinion. We refer in this to the matter of the western terminus
of the proposed route, requiring of a deposit of $10,000 by the
successful bidder, with provision for its forfeiture, and the neces-
sity for the publication of the notice provided for in the second
section of the establishing ordinance. We do not concur in what
is said in that opinion as to the provisions of Section 8 of the
establishing ordinance, which reads:

280    CIRCUIT COURT REPORTS—NEW SERIES.

Raynolds et al v. City of Cleveland et al. [Vol. VIII, N. S.

"Section 8.   The fare for which the bidder proposes to carry passengers shall entitle the passenger to one continuous ride in the same general direction, and each passenger shall be entitled to one transfer ticket for passage on another line, if any, owned by the successful bidder hereunder, his heirs, successors or assigns, at all points of intersection or connection with such other routes, if such transfer be necessary to enable him to continue to his destination."

This requirement seems to us to be one which the council had a right to make, and, if it be true that a company already operating a road with lines intersecting those of the proposed new line would be at a disadvantage in bidding, which may be matter of considerable doubt, still we see no reason why the requirement was not perfectly reasonable.   It might well be supposed by the council that whoever should be the successful bidder would be likely in the near future to construct other lines in the city, and but for this provision an additional fare might be then required.   If such a provision were not required, a company already operating in any city would have greatly the advantage over any other bidder.   It was for the council to say what would be required of the successful bidder.   It was its duty to make such provisions as in its judgment would conduce most to the good of the public.   It exercised that judgment.   There is no suggestion that it was not done in good faith, nor are we convinced that there was even a mistake in such judgment.   We would not allow an injunction on account of this provision.

Unless, however, the plaintiff is estopped from maintaining his action by some act of the city, we would enjoin for the failure to give the notice required by the second section of the establishing ordinance.   We are in accord with much that was said in the lower court on this question.   In addition to what is there said, we call attention to the case of *Dixon Co.* v. *Field*, 111 U. S., 83, in which case it is said in the syllabus:

"A recital in a municipal bond of facts which the corporate officers had authority by law to determine and to certify estops the corporation from denying those facts; but a recital there of facts which the corporate officers had no authority to deter-

mine, or a recital of matters of law does not estop the corporation.''

In this case it is held that when the proper tribunal has made a finding as to the facts necessary to authorize the issue of bonds by a county and has certified to the existence of such facts, the county, as against an innocent purchaser of the bonds, is estopped to deny that the facts are as found and certified.

In the opinion delivered by Judge Spear in *Ensel* v. *Levy & Bro.*, 46 O. S., 259, he quotes with approval this language from the opinion in *Beardsley* v. *Foote*, 14 O. S., 416:

''We think an estoppel may arise from admissions and declarations made without any fraudulent purpose. The circumstances may be such, that 'good conscience and honest dealing' may require a party to bear the consequences of his own negligent mistake, instead of throwing the resulting loss upon another whom he has misled.''

In this case Foote had purchased land upon which Beardsley had a lien. Before doing so he applied to the latter—whom he found attending an agricultural fair—for the purpose of ascertaining whether he held any claim or lien upon the land, informing him that he (Foote) expected to purchase if he could get a good title. Beardsley, in reply, gave a positive assurance that he had none, and Foote, relying on this assurance, purchased and paid for the land. An examination of the county records would have disclosed the lien. Beardsley was held estopped to set up his lien as against Foote's title. The syllabus reads:

''Admissions *in pais*, though made in good faith, may yet be made under such circumstances as to operate by way of estoppel, and preclude the party from afterwards gainsaying them.''

On page 260, Judge Spear says:

''From the foregoing, it is fair to assume, that where one, by his acts or declarations, made deliberately and with knowledge, induces another to believe certain facts to exist, and that other rightfully acts on the belief so induced, and is misled thereby, the former is estopped to afterwards set up a claim based upon facts inconsistent with the facts so relied upon, to the injury of the person so misled.''

282 CIRCUIT COURT REPORTS—NEW SERIES.

Raynolds et al v. City of Cleveland et al. [Vol. VIII, N. S.

The syllabus reads:

"An estoppel *in pais* arises where one is prejudiced by the willful act or declaration of another upon whose conduct the former has rightfully acted. Hence, where the owner of goods sells to one on credit, and knowingly delivers to him a receipt drawn in such form, and given under such circumstances as to cause an innocent purchaser, buying from the vendee, rightfully to believe that the goods will be delivered upon compliance by said purchaser with certain conditions in the receipt contained, and he parts with his money in good faith upon the belief thus created, such purchaser has the right to avail himself of the terms of the contract and the vendor is estopped to afterwards set up a lien for purchase-money and insist upon its payment as a further condition to delivery of the goods."

In the case of *The City of Mt. Vernon et al* v. *The State of Ohio, ex rel Berry*, the first clause of the syllabus reads:

"Where a municipal corporation has entered into a contract with an individual under and by virtue of a statute which is unconstitutional and the subject-matter of the contract is not *ultra vires*, illegal or *malum prohibitum*, and the facts are such, as against the corporation, as would estop an individual from setting up as a defense the unconstitutionality of the statute, the municipal corporation will also be so estopped."

From these cases and others we conclude that municipal corporations may be estopped by their own acts, as well as natural persons, under certain states of fact. They may not do those things which are *ultra vires* and thereby be estopped from denying the validity of the things so done, but they may be estopped from denying the existence of facts which, by the action of their proper officers they have declared to exist, which facts are necessary to authorize them to do some other thing when they have thereby misled another to his prejudice.

In the case under consideration the council was authorized by law to grant a franchise for the construction and operation of a street railroad on Dennison avenue, provided it pursued the mode pointed out by law for that purpose. The granting of the franchise was not *ultra vires*. By its own ordinance it provided in effect that such franchise would not be granted until notice for bids had been published for three consecutive

weeks. Having so provided, it was as much bound to make the advertisement as though the statute of the state had in terms required it. Before the franchise could be lawfully granted, it was necessary that such publication be made. It was the duty of the city to ascertain whether this publication had been made. Clearly, this duty of the city was to be performed by its council, That body must know, before it grants the franchise, that the publication has been made. By its ordinance granting the franchise it declared in these words:

"Whereas, Peter Witt, City Clerk of said city, in pursuance of the direction in said ordinance contained, did give public notice, by due publication thereof, in accordance with law, in two newspapers of opposite politics, and in a German newspaper, all of general circulation in said city, for three consecutive weeks next preceding the 18th day of July, 1903, advising the public that sealed proposals would be received not later than 12 o'clock noon of the 18th day of July, 1903, at office of the city clerk in the City Hall, for the grant of the right to construct and operate, for a period of twenty years, said street railroad, over said streets in said ordinance and advertisement described."

Here, then, was the statement solemnly made by the proper authority, to the grantee of the franchise, and to the public, that this prerequisite had been complied with. It was the duty of the council to have knowledge on the subject. It declared by this ordinance that it had such knowledge, and that the publication had been made. The grantee had a right to rely on this declaration, he being without knowledge on the subject. No search of the records of the council could have furnished him any information that the statement was not true. The Forest City Railway Company, which is the owner of all the rights which the grantee took, acted upon this information and in good faith expended something like $30,000 in execution of the work undertaken under the grant by the grantee. This sum, or the greater part of it, will be lost to the company if the injunction is allowed. Nothing is shown that will be lost to the city if it is denied. The proper authorities of the city have declared that thte public will be benefited by the construc-

tion and operation of a street railway along the proposed route. No one has bid for it but the grantee of this franchise. No other bidder is suggested as probable except a corporation which notified the city in writing that it would not bid. We come, therefore, to the conclusion that the petition should be dismissed, and judgment is rendered accordingly.

*Wilcox, Collister, Hadden & Parks,* for plaintiffs.

*City Counsel, Blandin, Rice & Ginn,* for defendants.